# UNITED STATES *v.* BOWLING ET AL.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 295. Argued April 27, 1921.—Decided June 1, 1921.

1. The power of the United States to ensure, by appropriate measures, that land allotted in severalty to a tribal Indian shall enure to the benefit of the allottee and his heirs while the title is restricted for their security, is no less where the allotment has been patented in fee but subject to a restriction on alienation, than where only a "trust patent" has issued and the fee remains with the United States in trust to be conveyed to the allottee or his heirs free of restriction at the end of the trust period. P. 486.

2. In either case, as an incident of the power, Congress may authorize and require the Secretary of the Interior to determine the heirs of a deceased allottee and may make his decision final and conclusive. P. 487.

3. The power of the Secretary of the Interior to determine the heirs of deceased allottees, if, as originally granted by § 1 of the Act of June 25, 1910, c. 431, 36 Stat. 855, it was intended to be confined to trust allotments, was extended to allotments in fee subject to restriction on alienation, by the Act of August 1, 1914, c. 222, 38 Stat. 582, the first of a series appropriating money to meet the cost of "determining the heirs of deceased Indian allottees' having any right, title, or interest, in any trust *or restricted* allotment, under regulations prescribed by the Secretary of the Interior." So *held* in view of continuous executive practice antedating the first appropriation, whereby the heirs of allottees holding restricted fees were determined in numerous cases, communication thereof through official reports to Congress, and provisos declaring the appropriations inapplicable to specified tribes whose allotments are of the restricted fee class. P. 488.

261 Fed. Rep. 657, reversed.

THE case is stated in the opinion.

Mr. *Leslie C. Garnett,* Special Assistant to the Attorney General, for the United States.

*Mr. Halbert H. McCluer,* with whom *Mr. Vern E. Thompson* was on the brief, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action by the United States to recover the possession of a tract of land in Oklahoma, with damages for its detention and use by the defendants for several years. The trial resulted in a judgment for the defendants, which the Circuit Court of Appeals affirmed. 261 Fed. Rep. 657.

The land was allotted and patented under the Act of March 2, 1889, c. 422, 25 Stat. 1013, to Pe-te-lon-o-zah, or William Wea, a member of the confederated Wea, Peoria, Kaskaskia and Piankeshaw tribes of Indians, as his distributive share of the tribal lands. The patent was dated April 8, 1890, conveyed a fee simple title and imposed a restriction upon alienation for a period of twenty-five years from its date. Wea died intestate and seized of the land January 23, 1894. Shortly after his death persons claiming to be his heirs executed a conveyance of the land and on May 4, 1914, this court affirmed a decree against two of the present defendants canceling that conveyance as made in violation of the restriction. *Bowling* v. *United States,* 233 U. S. 528.

This action was commenced January 20, 1915, during the period of restriction, and, according to the petition, was brought in the interest of designated Indians who were alleged to be the heirs at law of Wea, to be entitled to the possession and to be members of the confederated tribes and still under the supervision and guardianship of the United States. The defendants, by their answer, admitted that the land had been allotted and patented to Wea and that they were in possession; denied all the other allegations in the petition, including the heirship

of those in whose interest the action was brought, and alleged that at the time of answering the defendants were rightfully in possession under conveyances executed by the real heirs after the restriction upon alienation expired.

At the trial the United States, to establish the heirship of those in whose interest the action was brought, offered in evidence an exemplified copy of a decision by the Secretary of the Interior, dated October 21, 1914, during the period of restriction, finding and holding that they were the heirs, and the sole heirs, of Wea, and stating their respective shares. To this the defendants objected upon the ground that the law of Congress under which the decision was given applied only where the deceased allottee held under a trust patent. The court sustained the objection and no other evidence on the subject was presented by either side. Whether the court erred in excluding the Secretary's determination is the only question reserved at the trial and now presented for decision. It was not claimed that the Secretary proceeded without notice or without according all who were interested a full hearing, but only that he had not been empowered to determine who were the heirs where the deceased allottee held, as did Wea, under a patent in fee, even though the land was subject to a restriction upon alienation.

Before coming to the acts under which the Secretary of the Interior proceeded, it will be helpful to refer to the modes, long in use, by which Indians are prevented from improvidently disposing of allotted lands. One is to issue to the allottee a written instrument or certificate, called a trust patent, declaring that the United States will hold the land for a designated period, usually twenty-five years, in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and at the expiration of that period will convey the same to him, or

his heirs, in fee, discharged of the trust and free of all charge or incumbrance. The other is to issue at once to the allottee a patent conveying to him the land in fee and imposing a restriction upon its alienation for twenty-five years or some other stated period. While alienation is effectually restricted by either mode, allotments under the first are commonly spoken of as trust allotments and those under the second as restricted allotments. As respects both classes of allotments—one as much as the other—the United States possesses a supervisory control over the land and may take appropriate measures to make sure that it inures to the sole use and benefit of the allottee and his heirs throughout the original or any extended period of restriction.[1] As an incident to this power Congress may authorize and require the Secretary of the Interior to determine the legal heirs of a deceased allottee and may make that determination final and conclusive.[2] It rests with Congress to say which of the two modes shall be followed in respect of the lands of a particular tribe, and this usually is done in the act directing that the lands be allotted. The Act of 1889, under which the lands of the confederated tribes were allotted, required that the second mode be followed—that of issuing a patent in fee imposing a restriction upon alienation for a fixed period.

By § 1 of the Act of June 25, 1910, c. 431, 36 Stat. 855, Congress provided: "That when any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having

---

[1] *United States* v. *Rickert,* 188 U. S. 432; *Tiger* v. *Western Investment Co.,* 221 U. S. 286; *Heckman* v. *United States,* 224 U. S. 413; *Brader* v. *James,* 246 U. S. 88; *Talley* v. *Burgess,* 246 U. S. 104; *La Motte* v. *United States,* 254 U. S. 570.

[2] *Hallowell* v. *Commons,* 239 U. S. 506. And see *Lane* v. *Mickadiet,* 241 U. S. 201; *Egan* v. *McDonald,* 246 U. S. 227.

made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive."

The courts below concluded from the words of this provision that it was confined to trust allotments—those held under trust patents. Separately considered, it hardly admits of any other view; and yet other provisions in the same section suggest that its words may not have been happily chosen and that it may have been intended to be more comprehensive. To illustrate, a closely following proviso declares: "That the Secretary of the Interior is hereby authorized in his discretion to issue a certificate of competency, upon application therefor, to any Indian, or in case of his death, to his heirs, to whom a patent in fee containing restrictions on alienation has been or may hereafter be issued, and such certificate shall have the effect of removing the restrictions on alienation contained in such patent."

But we need not dwell upon the internal proof of what was intended, for by a series of appropriation acts, beginning August 1, 1914, and extending to the present time, Congress has treated and construed the provision as including both trust and restricted allotments.[1] Each of the appropriation acts contains a paragraph appropriating one hundred thousand dollars to meet the cost of "determining the heirs of deceased Indian allottees having any right, title, or interest, in any trust or restricted allotment, under regulations prescribed by the Secretary of the Interior," and they show affirmatively that they refer to a determination under § 1 of the Act of

[1] Acts August 1, 1914, c. 222, 38 Stat. 582, 586; May 18, 1916, c. 125, 39 Stat. 123, 127; March 2, 1917, c. 146, 39 Stat. 969, 972; May 25, 1918, c. 86, 40 Stat. 561, 567; June 30, 1919, c. 4, 41 Stat. 3, 8; February 14, 1920, c. 75, 41 Stat. 408, 413.

1910. Not only so, but they all contain a proviso that "this paragraph shall not apply to the Osage Indians, nor to the Five Civilized Tribes," which would be a needless provision if Congress had not intended that the power to determine heirships should extend to restricted as well as trust allotments; for the allotments to the Osages and to members of the Five Civilized Tribes were not trust but restricted allotments. The annual reports of the Indian Bureau [1] show that the officers of that bureau, including the Secretary of the Interior, have uniformly regarded § 1 of the Act of 1910, in connection with these appropriation acts, as enabling them to determine the heirs of both classes of deceased allottees, and they further show that in each year since these appropriations began these officers have determined the heirs of hundreds of deceased allottees who held under restricted as distinguished from trust allotments. In one year alone the number was 566 and of course the aggregate of the values involved was great. These reports were regularly laid before Congress and, with the knowledge thus obtained, it repeated the appropriation each year. Of course, this can be accounted for only upon the theory that in the opinion of Congress the officers were but exercising the power which it intended they should have and exercise. It was after the original provision had been so construed and supplemented by the first of the appropriation acts that Wea's heirs were determined by the Secretary. Apparently the appropriation acts and the reports of the Indian Bureau were not brought to the attention of the courts below.

We conclude that the District Court erred in sustain-

---

[1] House Doc. No. 90, p. 38, 64th Cong., 1st sess.; House Doc. No. 1899, p. 51, 64th Cong., 2d sess.; House Doc. No. 915, p. 53, 65th Cong., 2d sess.; House Doc. No. 1455, p. 53, 65th Cong., 3rd sess.; House Doc. No. 409, p. 51, 66th Cong., 2d sess.; House Doc. No. 849, p. 45, 66th Cong., 2d sess.

ing the defendants' objection to the introduction in evidence of the Secretary's determination, and therefore that the judgment must be reversed and the case remanded for a new trial.

· *Judgment reversed.*