# SUNDERLAND v. UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 79.  Argued October 16, 1924.—Decided November 17, 1924.

1. The United States is not bound by a decree of a state court, to which it was not a party, quieting title to restricted Indian land against the Indian in favor of his attempted grantee, but may have both the conveyance and the decree set aside by suit in the federal court.  P. 232.

2. The fact that land has become subject to jurisdiction of a State and exclusively within the control of her laws does not prevent the United States from restricting for a limited time the right of a tribal Indian to alienate it, when purchased for him with funds derived from the sale of other lands originally subject to a like restriction.  Such restriction not conflicting with any statute, rule of law or policy of the State, the question of supremacy of power does not arise.  *Id.*

3. The validity of such a restraint on alienation imposed by the United States is not to be tested by the power of an ordinary grantor to impose a like restraint on an ordinary grantee.  P. 233.

4. So long as the Indians remain wards of the Government, the interposition of the strong shield of the federal law is justified, to the end that they be not overreached or despoiled in respect of their property of whatsoever kind or nature.  P. 234.

5. In view of the general protective policy towards the Indians, statutory authority to the Secretary of the Interior to remove restrictions on allotted lands in the Five Civilized Tribes " under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe " (Act of May 27, 1908, § 1, c. 199, 35 Stat. 312), justifies a rule that where lands are purchased for Indians of the restricted class with the proceeds of sale of restricted allotted lands the deed of the lands purchased shall contain a like restriction.  *Id.*

6. Also, the authority of the Secretary to withhold his consent to a proposed investment of such proceeds of sale subject to his control, includes the lesser authority to allow the investment upon condition that the property bought shall be impressed with a like control.  P. 235.

7. Evidence *held* sufficient to show that restrictions on alienation in a deed to an Indian were directed by the Secretary of the Interior. P. 235.

287 Fed. 468, affirmed.

APPEAL from a decree of the Circuit Court of Appeals which affirmed a decree of the District Court setting aside, at the suit of the United States, a deed made to the appellant by a half-blood Creek Indian, and a decree of an Oklahoma court quieting the title against the Indian in the appellant's favor.

*Mr. E. G. Wilson* and *Mr. J. M. Springer,* with whom *Mr. W. H. Thompson* was on the brief, for appellant.

Congress cannot authorize the Secretary of the Interior to impose restrictions on released Indian lands that have passed into private ownership and are subject to the taxing power of the State and the jurisdiction of her courts and to the freedom of trade and commerce.

The Tenth Amendment gives to the State the exclusive right to legislate concerning the lands within her borders, not the property of the United States. *Martin v. Hunter's Lessee,* 1 Wheat. 304; *United States v. Harris,* 106 U. S. 629; *McCulloch v. Maryland,* 4 Wheat. 316; *Kansas v. Colorado,* 206 U. S. 46, 89, 92; *Martin v. Waddell,* 16 Pet. 367; *Pollard's Lessee v. Hagan,* 3 How. 212; *Goodtitle v. Kibbe,* 9 How. 471; *Barney v. Keokuk,* 94 U. S. 324; *St. Louis v. Myers,* 113 U. S. 566; *Packer v. Bird,* 137 U. S. 661; *Hardin v. Jordan,* 140 U. S. 371; *Kaukauna Water Co. v. Green Bay Co.,* 142 U. S. 254; *Shively v. Bowlby,* 152 U. S. 1; *St. Anthony Falls Co. v. Water Commissioners,* 168 U. S. 349; *Kean v. Calumet Canal Co.,* 190 U. S. 452; *Van Brocklin v. Tennessee,* 117 U. S. 151; Federalist (Hamilton's Essays No. 78); *Coyle v. Smith,* 221 U. S. 559; *Case v. Toftus,* 39 Fed. 730.

*United States v. Law,* 250 Fed. 218, has no support either in the act, or in reason, and is in direct conflict with *McCurdy v. United States,* 246 U. S. 263; *United States*

v. *Gray,* 284 Fed. 103; and *United States* v. *Ransom,* 284 Fed. 108. See also *U. S. Fidelity & Guaranty Co.* v. *Hansen,* 36 Okla. 459; *Francis* v. *Francis,* 203 U. S. 233. Distinguishing, *Tiger* v. *Western Inv. Co.,* 221 U. S. 286; *United States* v. *Gray,* 201 Fed. 291; *United States* v. *Thurston County,* 143 Fed. 287; *National Bank of Commerce* v. *Anderson,* 147 Fed. 87; and *United States* v. *Yakima County,* 274 Fed. 115, relied upon by the court in the *Law Case.*

It was the policy of the act to cast the Indian upon his own resources, so far as possible, first, by conferring authority upon the Secretary to release restrictions against alienation; and second, by granting to the Secretary the authority to dispose of the proceeds of the restricted lands for the benefit of the Indian. When the investment is once made, all authority of the Secretary immediately ceases. See § 5, Act of 1908. Had it been the intention of Congress to restrict against alienation property purchased by the Secretary, it would have said so.

By the Oklahoma Enabling Act, § 3, the power of the United States is extended no farther than to lands held by an Indian tribe, or nation, and the property belonging to the United States.

The evidence in this case is wholly insufficient to support the judgment and conclusion of the trial court.

*Mr. H. L. Underwood,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. Assistant Attorney General Wells* were on the brief, for the United States.

The Secretary was authorized to impose restrictions upon alienation of the land purchased with trust funds.

The prime purpose of the Act of May 27, 1908, was to make subject to the taxing power of Oklahoma lands allotted to certain classes of members of the Five Civilized Tribes who were represented to Congress as competent to manage their property without supervision. The stand-

ard of competency adopted by Congress was the quantum of Indian blood. Congress was not entirely convinced that half-bloods were capable of unsupervised management of their property, and while it was willing to " take a chance " on their capacity, yet it cast an anchor to windward by preserving the homestead. But to provide for cases where the restriction upon alienation might work to the detriment of the Indians and the removal of the restriction might be to his best interest, Congress enacted (§ 1) " that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe." This language leaves no doubt of the intent of Congress to give the Secretary broad discretion in the exercise of the power conferred. It is he to whom is intrusted the determination of what is for the benefit of the Indian.

It is significant that Congress appeared to have considered that removal of restrictions would only occur when a sale of the land was contemplated, and the inference is that the Secretary would exercise his power only where a sale of the restricted property was deemed advantageous to the Indian and more beneficial to him than its retention would be. Noteworthy also is the fact that not only were the rules and regulations of the Secretary to govern the sale of the property but also the disposal of the proceeds. Congress considered one just as important as the other. The need of supervision and restraint in the disposal of the proceeds is abundantly demonstrated by the transactions in the instant case.

The test of the validity of the regulations is their reasonableness, appropriateness, and their consistency with the law by which they were authorized. *United States v. Morehead*, 243 U. S. 607; *LaMotte v. United States*, 254 U. S. 570.

The regulation under which the Secretary acted passes that test. But even if there were doubt about it, the doubt should be resolved in favor of the validity of the regulation, for it is clear that it is beneficial to the Indian. *United States* v. *Celestine,* 215 U. S. 278.

The appellant apparently conceives the power of the Secretary, so far as the proceeds of the sale are concerned, as limited to approving or vetoing a proposed investment of them without condition. If that were correct it is difficult to see the need of rules and regulations governing the disposal of the proceeds. So limited an authority would not make them necessary. The rule is that such powers are to be broadly construed to accomplish the purpose of Congress. *Parker* v. *Richard,* 250 U. S. 235; *LaMotte* v. *United States,* 254 U. S. 570.

The continuing, by § 1 of the Act of 1908, of restrictions on the homesteads of Indians in the same class as Perryman, was in furtherance of the policy of protecting and safeguarding the Indians. When Perryman's homestead allotment was sold that policy obtained as to the proceeds which were substituted for the homestead. There was merely a change in the form of that to which the duty extended. The proceeds were trust funds. Being such, the investment of them in other property impressed it with the same trust. *United States* v. *Thurston County,* 143 Fed. 287; *National Bank of Commerce* v. *Anderson,* 147 Fed. 87.

While the language of the act is that " the Secretary of the Interior may remove restrictions," yet it really amounts to an authority to the Secretary to sanction a sale of the resricted land.

Other legislation with respect to sales of lands and disposal of the proceeds evidences the policy of Congress to consider the proceeds as trust funds and to authorize supervision of and control over them. Acts of March 1, 1907, 34 Stat. 1015; May 29, 1908, § 1, 35 Stat. 444; June

25, 1910, § 1, 36 Stat. 855.   See *Rider* v. *La Clair,* 77 Wash. 488.

In addition to the case at bar, the Circuit Court of Appeals has upheld the power of the Secretary and the validity of this restriction in the deed in *United States* v. *Law,* 250 Fed. 218, and in *United States* v. *Smith,* 288 Fed. 356.

*United States* v. *Gray,* 284 Fed. 103 (dismissed for want of jurisdiction, 263 U. S. 689), and *United States* v. *Ransom,* 284 Fed. 108 (affirmed per curiam, 263 U. S. 691), involved the question whether lands purchased with restricted or trust funds were subject to state taxation—a very different question from that of the power of the United States to control its Indian wards in the disposition of such lands.   The same is true of *McCurdy* v. *United States,* 246 U. S. 263.

The legislation granting such power is constitutional, *Tiger* v. *Western Inv. Co.,* 221 U. S. 286; *Blanset* v. *Cardin,* 256 U. S. 319; *Bunch* v. *Cole,* 263 U. S. 250; *Sperry Oil Co.* v. *Chisholm,* 264 U. S. 488; and does not conflict with the Oklahoma Enabling Act.

There was no error in the admission of evidence.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Nathaniel Perryman, a Creek half-blood Indian, was allotted a homestead, with restrictions against alienation until April 26, 1931, subject, however, to removal, wholly or in part, by the Secretary of the Interior, " under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe." § 1, c. 199, 35 Stat. 312. Upon application, the Secretary removed the restrictions from a portion of the homestead, which was then sold, the proceeds of the sale being retained by the Secretary. Subsequently a portion of the proceeds was used to purchase

another tract of land (the subject of the present controversy), such purchase being authorized by the Secretary upon condition that the deed of conveyance contain a clause restricting the alienation of the land so purchased until April 26, 1931, "unless made with the consent of and approved by the Secretary of the Interior." The deed was made accordingly and duly recorded in the records of Tulsa County, Oklahoma. Perryman, thereafter, without the consent of the Secretary, sold and conveyed the land to the appellant. A decree of an Oklahoma state court was obtained in a suit against Perryman, to which the United States was not a party, quieting title in appellant. The United States then brought this suit in the Federal District Court for the Eastern District of Oklahoma to cancel and set aside the conveyance of the land to appellant and annul the decree of the state court. The District Court rendered a decree in favor of the United States, which was affirmed by the Court of Appeals. 287 Fed. 468.

Upon the appeal here, appellant does not seriously challenge the decree in so far as it annuls the decree of the state court (*Bowling* v. *United States,* 233 U. S. 528, 534-535; *Privett* v. *United States,* 256 U. S. 201, 203), but confines his attack to that portion of the decree canceling the deed. The grounds relied upon are: (1) That Congress is without power to authorize the imposition of restrictions upon the sale of lands within a State which have passed to private ownership; (2) That Congress has not, in fact, conferred upon the Secretary such authority; and (3) That there is no competent, relevant or material evidence sufficient to support the decree of the trial court.

*First.* The power of Congress is challenged upon the ground that the land had become subject to the jurisdiction of the State and was exclusively within the control of its laws. The general rule is not to be doubted, that the tenure, transfer, control and disposition of real prop-

erty are matters which rest exclusively with the State where the property lies, *United States* v. *Fox*, 94 U. S. 315, 320-321; but it by no means follows that a restriction upon alienation, limited as it is here, may not be imposed by the United States as a condition upon which a purchase of private lands within the State will be made for an Indian ward. The question is argued as though there had been an actual invasion of or an interference with the authority of the State to regulate and condition the transfer of land within its boundaries. But there is no such invasion or interference. If Congress, in fulfillment of its duty to protect the Indians, whose welfare is the peculiar concern of the 'Federal Government, deems it proper to restrict for a limited time the right of the individual Indian to alienate land purchased for him with funds arising from the sale of other lands originally subject to a like restriction, we are not aware of anything which stands in the way. The State of Oklahoma is not concerned, since there is no state statute, rule of law or policy, which has been called to our attention, to the contrary effect. If there were, or if the power of state taxation were involved, we should consider the question of supremacy of power; but no such question is presented by this record.

Nor are we called upon to determine whether a qualified and limited restraint upon the alienation of a fee simple title, imposed by an ordinary grantor upon an ordinary grantee, would be valid, even though not offensive to the rule against perpetuities. However that may be, we do not doubt the power of the United States to impose such a restraint upon the sale of the lands of its Indian wards, whether acquired by private purchase and generally subject to state control or not. Such power rests upon the dependent character of the Indians, their recognized inability to safely conduct business affairs, and the

19458°—25——19

peculiar duty of the Federal Government to safeguard their interests and protect them against the greed of others and their own improvidence. See and compare *Libby* v. *Clark,* 118 U. S. 250, 255; *United States* v. *Paine Lumber Co.,* 206 U. S. 467, 473; *Blanset* v. *Cardin,* 256 U. S. 319, 326; *Bunch* v. *Cole,* 263 U. S. 250, 252; *Sperry Oil Co.* v. *Chisholm,* 264 U. S. 488, 493. And the power does not fall short of the need; but, so long as they remain wards of the Government, justifies the interposition of the strong shield of federal law to the end that they be not overreached or despoiled in respect of their property of whatsoever kind or nature. *United States* v. *Kagama,* 118 U. S. 375, 383–4.

*Second.* The statute imposes the restriction upon the alienation of the Indian's *allotted* lands and this, it is said, precludes an extension of the restraint to lands purchased for him. The authority given the Secretary to remove such restrictions, under prescribed rules and regulations " concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians," it is further insisted, ends with the disposal of the proceeds and does not extend so far as to permit him to impose restrictions upon the alienation of land purchased with such proceeds. The Secretary did not construe the statute so narrowly, but, acting under it, among other rules, prescribed that, " Where lands are purchased for the use and benefit of any citizen of the Five Civilized Tribes, of the restricted class, payment for which is made from proceeds arising from the sale of restricted allotted lands . . . the superintendent . . . shall cause a conveyance of such lands to be made on a form of conveyance containing an habendum clause against alienation or encumbrance until April 26, 1931."

When the general protective policy of Congress in dealing with the Indians is borne in mind, it reasonably can-

not be doubted that the authority conferred upon the Secretary to make rules concerning the " disposal of the proceeds for the benefit of the respective Indians " is broad enough to justify the rule in question. Since the allotted lands could not be sold or encumbered without his consent, and since the proceeds of any sale thereof were subject to his control and could only be disposed of with his approval and under such rules as he might prescribe for the benefit of the respective Indians, the extension of such control to the property in which the proceeds were directly invested would seem to be within the statute fairly construed. Indeed, we think the authority of the Secretary to withhold his consent to the proposed investment of the proceeds subject to his control, includes the lesser authority to allow the investment upon condition that the property into which the proceeds are converted shall be impressed with a like control. See *United States* v. *Law,* 250 Fed. 218; *United States* v. *Thurston County,* 143 Fed. 287, 290–291; *National Bank of Commerce* v. *Anderson,* 147 Fed. 87, 90. It is unnecessary to review the decisions said by appellant to justify the contrary conclusion. Upon examination they are all found to be readily differentiated from the case under consideration.

*Third.* The only suggestion contained in appellant's brief which seriously relates to the sufficiency of the evidence, is that the proof fails to establish that the Secretary imposed restrictions specifically upon the sale of the land in question. There was received in evidence a telegram from the Department, purporting to grant authority to purchase the land for Perryman and directing the use of " a restricted form of deed." We are unable to see how this could have referred to anything else than the requirement of the rule heretofore quoted. It is said further that the telegram was not recorded in any office so as to

give constructive notice to appellant or the public. It was not necessary that it should have been. The conveyance made by its authority, embodying the restriction required by the rule, was recorded, and that was enough. The remainder of appellant's brief under this head resolves itself into a mere challenge of the competency or relevancy of certain documentary evidence, including the telegram just mentioned, admitted, over objection, by the trial court. The assignment of errors contains no suggestion that the erroneous admission of evidence would be relied upon. The rulings of the court, therefore, admitting such evidence are not before us.

*Decree affirmed.*