## PEORIA TRIBE OR BAND OF INDIANS v. WEA TOWNSITE CO. et al.

### No. 2148.

Circuit Court of Appeals, Tenth Circuit.

Feb. 24, 1941.

John S. Severson and Frank Settle, both of Tulsa, Okl. (Eugene O. Monnet and

Sam Clammer, both of Tulsa, Okl., on the brief), for appellant.

A. Scott Thompson, of Miami, Okl. (Dick Rice and Joseph S. Thompson, both of Miami, Okl., on the brief), for appellees.

Stephen R. Lewis, of Tulsa, Okl., filed a brief amicus curiae.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Peoria Tribe of Indians by George Sky, head man and chief, brought this suit against Wea Townsite Company, a corporation, and the unknown heirs, executors, trustees, devisees, administrators, and assigns of William Wea, deceased, to set aside a determination of the heirs of Wea by the Secretary of the Interior, to cancel conveyances made by the alleged heirs of Wea, and to quiet the title in the Tribe to a tract of 198.99 acres of land situated in Ottawa County, Oklahoma, which was allotted to Wea, a member of the Confederated Wea, Peoria, Kas-kas-kia, and Piankeshaw Tribes. The Townsite Company interposed a motion to dismiss the complaint. The trial court sustained the motion and entered a judgment dismissing the suit. The Tribe has appealed.

From the allegations of the complaint and the exhibits thereto attached, these facts appear: On April 8, 1890, the tract of land was allotted to Wea, Peoria allottee No. 103, under the Act of March 2, 1889, 25 Stat. 1013, "An act to provide for the allotment of land in severalty to United Peorias and Miamies in Indian Territory, and for other purposes." On April 8, 1890, patent therefor was issued to Wea, "a member of the Wea, Kas-kas-kia, Peoria and Piankeshaw"; Wea died intestate on or about January 23, 1894, seized and possessed of such land. A proceeding was instituted before the Secretary of the Interior for the determination of the heirs of Wea. E. B. Meritt, Assistant Commissioner of Indian Affairs, made a report of the proceedings to the Secretary of the Interior on October 19, 1914, in which he found that Wea left neither wife, issue, father, mother, sister, nor brother; that he had a half-brother and half-sister, but that their lines were extinct before his death; that according to the law of the state of Kansas, one-half of his estate descended to the heirs of his maternal grandparents and one-half to the heirs of his paternal grandparents. He found and set forth by name the collateral heirs and designated the interest inherited by each. The report was approved and a finding of heirship in accordance therewith was made by the Assistant Secretary of the Interior on October 22, 1914.

After the Secretary of the Interior determined the heirship, the United States, on January 20, 1915, on behalf of itself and the heirs so determined, brought an action in ejectment against Bowling and others, who were in possession of the land, demanding possession and damages for detention. From a judgment in favor of the United States, the defendants took a writ of error to the Circuit Court of Appeals for the Eighth Judicial Circuit, where the judgment below was affirmed. See Bowling v. United States, 8 Cir., 299 F. 438.

The Tribe challenges the validity of the determination of heirship by the Secretary of the Interior on the ground that it was made without notice to all interested parties and particularly without notice to the Tribe.

That there was a hearing before the determination of heirship and that many of the parties interested had notice thereof and appeared and were heard is manifest from the report of the Assistant Commissioner of Indian Affairs.[1]

---

[1] We quote from the report as follows:
"Mary Ann Delonias claims as the surviving wife of William Wea and brings considerable evidence in support of her claim. In consideration of her status, both the evidence presented by her at the hearing held before the Superintendent of the Quapaw Agency and copies of the testimony adduced in the case brought on her behalf in the state courts in 1909 were reviewed. * * * Since the hearing held before the Superintendent of the Quapaw Agency, counsel for Mary Ann Delonias have filed a motion for a rehearing in this case, * * *. Various briefs and affidavits have been presented by her counsel since the hearing at the Agency, but it does not appear that these add any new evidence or furnish any ground for throwing this case open again. It is, therefore, recommended that the determination of the Department be made based upon the voluminous testimony and arguments herewith submitted. * * * In all the voluminous testimony that has been taken in this case since that date the unquestionable preponderance of evidence has shown the absence of blood rel-

The Tribe appeared in the proceedings and prayed that in the event of failure of the line of descent, the land be held to revert to the Tribe. There is no allegation that it was not afforded full opportunity for a hearing upon the claim thus asserted. Assuming, but not deciding, that the Tribe was entitled to notice, it is clear that it waived notice by voluntarily appearing in the proceedings and seeking affirmative relief.[2] The Tribe may not complain of insufficiency of notice to others.[3]

The Act of March 2, 1889, known as the "Peoria and Miami Nations Act," under which the land in question was allotted, provided that the Act of February 8, 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq., known as the "General Allotment Act," should extend to and be made applicable to the Confederated Wea, Peoria, Kas-kas-kia and Piankeshaw tribes of Indians and the Western Miami tribe of Indians, who were then located in the northeastern part of Indian Territory. 25 U.S.C.A. § 340. The General Allotment Act, 25 U.S.C.A. § 348, provided that the laws of the state of Kansas regulating descent should apply to all lands in the Indian Territory allotted under the provisions thereof. Sec. 31 of the Act of May 2, 1890, 26 Stat. 81, 94, provided that the general laws of Arkansas in force at the close of the session of the general assembly of that state of 1883, published in a volume known as Mansfield's Digest of the Statutes of Arkansas, "which are not locally inapplicable or in conflict with this act or with any law of Congress, relating to the subjects specially mentioned in this section, are hereby extended over and put in force in the Indian Territory until Congress shall otherwise provide." The section then sets forth the chapters and titles of the statutes adopted, including chapter 49 on the subject of "descents and distributions." The General Allotment Act was a law of Congress relating to the subject of descent and distribution specially mentioned in § 31 and was in conflict therewith. It follows that the Kansas law governs the descent and distribution of lands allotted under the General Allotment Act as extended by the Act of March 2, 1889. The Secretary of the Interior properly applied the Kansas law in determining the heirs of Wea.

The Act of June 25, 1910, 36 Stat. 855, 25 U.S.C.A. § 372, empowered the Secretary of the Interior to determine the heirs of an Indian to whom an allotment of land has been made who dies intestate before the expiration of the trust period. The

---

atives between these claimants and the decedent.

"In the course of these proceedings application was made on behalf of the Peoria tribe of Indians, asking that in the failure of the line of descent to this estate, the land be held to revert to the tribe. In contravention of this claim there was urged the decision of the United States Court for the Northern District of the Indian Territory, rendered by Judge Springer April 4, 1899; which decision was to the effect that the tribe as such ceased to exist when its members were allotted and became citizens of the United States; and that said tribe could not, therefore, be made a party to a suit. Without reference to this decision, however, it may be stated that the laws of the State of Kansas, in force at this time in this jurisdiction, provided for inheritance so long as there was any one living whose ancestry can be traced back to a common ancestor with the decedent, no matter how many degrees removed; and that further investigation of this case has resulted in the discovery of some relatives, cousins several degrees removed, who, under the provisions of the Kansas laws, would be entitled to inherit.

"There remains to be considered the claim of the collateral relatives of William Wea as disclosed by the various investigations into this case. The testimony taken, extending over a period of years, is very contradictory but the evidence seems to be strongest along the following lines: * * *

"It thus appears from the great mass of testimony adduced at hearings held at various dates, that the surviving heirs of William Wea and the extent of their interests in his estate are as follows: * * *"

[2] Doty v. Love, 295 U.S. 64, 74, 55 S. Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438;
Louisville & Nashville Rd. Co. v. Schmidt, 177 U.S. 230, 237, 20 S.Ct. 620, 44 L.Ed. 747;
Henderson v. Carbondale Coal & Coke Co., 140 U.S. 25, 40, 11 S.Ct. 691, 35 L. Ed. 332;
United States v. Yates, 6 How. 605, 47 U.S. 605, 607, 12 L.Ed. 575;
Nelson v. Jadrijevics, 5 Cir., 59 F.2d 25, 27;
Woodburn Lodge No. 102, I. O. O. F. v. Wilson, 148 Or. 150, 34 P.2d 611, 615;
Morris Land & Cattle Co. v. Kilpatrick, 5 Cir., 256 F. 788, 790, 791.

[3] Doty v. Love, 295 U.S. 64, 74, 55 S.Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438.

trust period under the Act of March 2, 1889 ran for 25 years from the date of the issuance of the patent. Here, the patent was issued April 8, 1890, and Wea died January 23, 1894, before the expiration of the trust period. It follows that the Secretary of the Interior had exclusive jurisdiction to determine the heirship.[4] His decision is final and conclusive and not subject to collateral attack or review by the courts in the absence of a showing of fraud, error of law, or gross mistake of fact.[5] The Secretary of the Interior has power to reopen his decision as to heirship and grant a rehearing.[6] While the court has power to set aside such a decision for fraud, gross mistake, or grievous error of law,[7] the record here discloses no facts warranting relief on those grounds.

We conclude that the determination of the Secretary of the Interior is conclusive on the Tribe and the judgment is accordingly affirmed.

[4] United States v. Bowling, 256 U.S. 484, 41 S.Ct. 561, 65 L.Ed. 1054;

Hallowell v. Commons, 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409.

[5] Dixon v. Cox, 8 Cir., 268 F. 285, 289; Chase v. United States, 8 Cir., 272 F. 684, 685;

Frederick v. Rock Island Sav. Bank, 44 S.D. 477, 184 N.W. 234;

Maz-He v. Jefferson Trust Co., 82 Okl. 107, 198 P. 319;

United States v. Wildcat, 244 U.S. 111; 37 S.Ct. 561, 61 L.Ed. 1024.

[6] Lane v. United States ex rel. Mickadiet, 241 U.S. 201, 36 S.Ct. 599, 60 L.Ed. 956.

[7] See Hanson v. Hoffman, 10 Cir., 113 F.2d 780, 791.