## GRAND RIVER DAM AUTHORITY v. PARKER et al.

### No. 545 Civ.

District Court, N. D. Oklahoma.

July 23, 1941.

R. L. Davidson, of Tulsa, Okl., and Q. B. Boydstun, of Vinita, Okl., for plaintiff.

Whit Y. Mauzy, U. S. Dist. Atty., and Chester A. Brewer, Asst. U. S. Dist. Atty., both of Tulsa, Okl., and Marvin J. Sonosky, Asst. U. S. Atty. Gen., for the United States.

SAVAGE, District Judge.

The Grand River Dam Authority, a public corporation, brought this action in the District Court of Rogers County, Oklahoma, to condemn a right of way 100 feet in width for use in the erection of electric transmission lines across two tracts of land situated in Rogers County, Oklahoma. The plaintiff corporation was created by the laws of the State of Oklahoma as an instrumentality of the state for the purpose of storing and preserving the water of Grand River and its tributaries, using water power to generate electric energy and selling and distributing the electric energy thus produced.

The land is described in the petition and referred to as Tract No. 1 and Tract No. 2. Tract No. 1 is a part of the surplus and homestead allotments of Cahseelouee Tickeater, an enrolled Cherokee Indian of the full blood. The land has been certified as restricted and tax exempt pursuant to Section 4 of the Act of May 10, 1928, 45 Stat. 495, 496. The allottee died in 1932. The heirs have not been judicially determined but some of the defendants, who claim to be heirs of the deceased allottee and assert an interest in the land, are restricted Cherokee Indians.

The United States is not named as a party defendant. Notice of the pendency of the action as to Tract No. 1 was served on the Superintendent for the Five Civilized Tribes in the manner prescribed by Section 3 of the Act of April 12, 1926, 44 Stat. 239, 240. The state court ordered the cause removed to this court upon the petition for removal filed by the United States.

The cause is now before the court upon the motion of the United States to dismiss the action on the general ground that this court does not have jurisdiction. It is contended that this court does not have jurisdiction for the reasons: (1) that the United States is an indispensable party and has not been made a party in this cause; (2) that the state court was without jurisdiction because the United States had not consented to be sued in the state court and, therefore, on removal this court is without jurisdiction; (3) that the plaintiff is not following the procedure set forth in Section 15 of the Act of February 28, 1902, 32 Stat. 43, 47.

■ Plaintiff concedes that the right of eminent domain does not exist with respect to restricted lands of members of the Five Civilized Tribes in the absence of a grant of authority by the United States. Sanction of the condemnation here sought is found in the Act of April 26, 1906, 34 Stat. 137. Section 25 of such Act authorizes the condemnation of restricted lands in the Indian Territory allotted to Indians in severalty for the purpose of constructing and maintaining electric transmission lines. It provides that in case of failure of any power company to make amicable settlement with any individual owner for lands sought to be condemned, all compensation and damage to be paid to the dissenting owner shall be determined as provided in Sections 15 and 17 of the Act of February 28, 1902, and all such procedure shall conform to said sections, except that the plats required to be filed by said Act shall be filed with the Secretary of the Interior and with the Commissioner of the Five Civilized Tribes.

Section 1 of the Act of May 27, 1908, 35 Stat. 312, provides that no restriction of alienation should be construed to prevent the exercise of the right of eminent domain in condemning rights of way for public purposes over allotted lands, and for such purposes continues in force Sections 13 to 23, inclusive, of the Act of February 28, 1902.

The Act of February 28, 1902 (hereinafter referred to as the "Enid and Anadarko Act"), is entitled "An Act To grant the right of way through the Oklahoma Territory and the Indian Territory to the Enid and Anadarko Railway Company, and for other purposes." It authorizes the condemnation of lands, including restricted Indian lands in the Oklahoma Territory and the Indian Territory for railroad rights of way and prescribes the procedure to be followed in such condemnation proceedings. Section 15 provides for payment for lands condemned or damage done by construction, for the filing of maps in the Department of Interior and with the United States Indian Agent for the Indian Territory, and further provides that, in case of failure to make amicable settlement with any individual owner for any lands sought to be condemned, all compensation to be paid to the dissenting owner: " * * * shall be determined by the appraisement of three disinterested referees, to be appointed by the judge of the United States court, or other court of jurisdiction in the district where such lands are situated, on application of the corporation or other person or party in interest."

Provision is made for the assessment of damages by such referees and for an appeal as follows: "Any party to the proceedings who is dissatisfied with the award of the referees shall have the right, within ten days after the making of the award, to appeal, by original petition, to the United States court, or other court of competent jurisdiction, sitting at the place nearest and most convenient to the property sought to be taken, where the question of the damages occasioned by the taking of the lands in controversy shall be tried de novo, * * *."

Section 17 of the Act sets out the procedure to be followed by a railroad company desiring to cross or unite its tracks with any other railroad. It provides for appointment of referees by the judge of the United States court for the district in which it is proposed to make such crossing or connection and for an appeal to the United States court of the Indian Territory by an aggrieved party.

■ Having thus authorized light or power companies to condemn restricted Indian lands, the question arises as to whether or not the United States is a necessary or indispensable party in such condemnation proceedings. The recent case of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235, compels a conclusion that the United States is an indispensable party. In that case, the State of Minnesota brought a proceeding in the state court to take by condemnation a right of way for a highway over allotted tracts of land which

were parts of the Grand Portage Indian Reservation. The lands had been allotted in severalty to individual Indians by trust patents. It was not shown that permission had been obtained from the Secretary of Interior to construct the highway over Indian lands. The United States was named a party defendant and the United States attorney removed the case to the Federal Court. The United States moved to dismiss the action on the ground that it had not consented to be sued and that the state court had no jurisdiction of the action or over the United States. The motion was denied by the district court and condemnation was granted. The Circuit Court of Appeals reversed with directions to dismiss. 8 Cir., 95 F.2d 468. In affirming the Circuit Court of Appeals Mr. Justice Brandeis, speaking for the Court, said [305 U.S. 382, 59 S.Ct. 294, 83 L.Ed. 235]: "First. The United States is an indispensable party defendant to the condemnation proceedings. A proceeding against property in which the United States has an interest is a suit against the United States. The Siren, 7 Wall. 152, 154, 19 L.Ed. 129; Carr v. United States, 98 U.S. 433, 437, 25 L.Ed. 209; Stanley v. Schwalby, 162 U.S. 255, 16 S.Ct. 754, 40 L.Ed. 960. Compare Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791. It is confessedly the owner of the fee of the Indian allotted lands and holds the same in trust for the allottees. As the United States owns the fee of these parcels, the right of way cannot be condemned without making it a party."

The plaintiff urges that the Minnesota case is not in point because in that case the legal title was held by the United States in trust for the Indians, while here the entire fee is vested in the Indians, subject only to restraints on alienation. The opinion of the court in the Minnesota case obviously is not based on the narrow conception that the interest of the United States depended upon its legal title.

It seems clear that the court adopted the broad view that the United States by the imposition of restraints on alienation on lands allotted to the Indians in severalty retained such an interest as would require it to be joined in any action instituted to obtain an interest in the lands. In the footnote at page 386 of the opinion in 305 U.S., at page 294 of 59 S.Ct., 83

L.Ed. 235, the court cites Bowling and Miami Investment Co. v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080; Privett v. United States, 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889; Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259, as establishing the rule that an alienation of the Indian's interest in lands allotted by patent in fee by judicial decision in a suit in which the United States is not a party has no binding effect upon the United States. The language of the court which appears to set at rest the question follows (page 388 of 305 U. S., page 295 of 59 S.Ct., 83 L.Ed. 235): "* * * As the parcels here in question were restricted lands, the interest of the United States continues throughout the condemnation proceedings. In its capacity as trustee for the Indians it is necessarily interested in the outcome of the suit—in the amount to be paid. That it is interested, also, in what shall be done with the proceeds is illustrated by the Act of June 30, 1932, c. 333, 47 Stat. 474, U.S.C. Title 25, § 409a, 25 U.S.C.A. § 409a, under which the Secretary of the Interior may determine that the proceeds of the condemnation of restricted Indian lands shall be re-invested in other lands subject to the same restrictions."

The retention of the fee by the United States is merely one of the two methods adopted by Congress to prevent alienation of restricted Indian lands. In United States v. Bowling, 256 U.S. 484, 41 S. Ct. 561, 65 L.Ed. 1054, the court explains that there are two modes by which Indians may be prevented from improvidently disposing of allotted lands. One is to issue to the allottee a trust patent declaring that the United States will hold the land in trust for the benefit of the allottee or his heirs. The other is to issue to the allottee a patent conveying the land in fee and imposing a restriction upon its alienation. The court stated (page 487 of 256 U.S., page 562 of 41 S.Ct., 65 L.Ed. 1054): "* * * While alienation is effectually restricted by either mode, allotments under the first are commonly spoken of as trust allotments and those under the second as restricted allotments. As respects both classes of allotments—one as much as the other—the United States possesses a supervisory control over the land and may take appropriate measures to make sure that it inures to the sole use and benefit of the allottee and his heirs throughout

the original or any extended period of restriction. * * *."

While the court in the Minnesota case had before it only the question of whether or not the United States is an indispensable party in an action to condemn Indian lands allotted in severalty by trust allotments, the reasoning of the court applies with equal force to this action to condemn lands allotted by a restricted allotment.

It is next urged by the plaintiff that Congress authorized this action to be brought in the state court, and that the United States has been made a party to the suit by reason of the service of notice on the Superintendent for the Five Civilized Tribes in conformity with Section 3 of the Act of April 12, 1926.

■ Permission to condemn grants by implication authority to sue the United States. But Congress designates the courts in which suit may be brought, and has provided generally for suits against the United States in Federal courts. Minnesota v. United States, supra.

Plaintiff insists that Section 15 of the Enid and Anadarko Act permits this action to be maintained in the state court. This section provides that in event of a failure to make a settlement, the compensation to the owner shall be determined by three referees, "to be appointed by the judge of the United States court, or other court of jurisdiction in the district where such lands are situated." It further provides that any party dissatisfied with the award of the referees may appeal "to the United States court, or other court of competent jurisdiction, sitting at the place nearest and most convenient to the property sought to be taken." The difficulty is to determine what was meant by Congress in directing referees to be appointed and appeals heard by "other courts of jurisdiction."

■ Section 25 of the Act of April 26, 1906, provides only for condemnation by light and power companies of lands in the Indian Territory. The procedure is to conform to Sections 15 and 17 of the Enid and Anadarko Act. The Enid and Anadarko Act provides generally for the acquisition of rights of way by railway companies in both the Indian Territory and the Oklahoma Territory. The Indian Territory and Oklahoma Territory were not combined to form the State of Oklahoma until 1907. State courts did not exist in the Indian Territory on February 28, 1902, or on April 26, 1906. Prior to 1907 the only courts in the Indian Territory were United States courts. See Act of March 1, 1889, 25 Stat. 783; Act of May 2, 1890, 26 Stat. 81. It can hardly be said that Congress on April 26, 1906, authorized condemnation suits to be brought in courts not then in existence. The Act of May 27, 1908, merely preserved the exercise of the right of eminent domain in respect to restricted lands, and did not enlarge upon rights theretofore granted. It must be concluded that Congress intended that actions by light or power companies to condemn restricted lands in the Indian Territory should be brought only in the United States courts. It is likely that the words, "other court of jurisdiction," in Section 15 of the Enid and Anadarko Act, apply to condemnation proceedings instituted by railway companies in the Oklahoma Territory.

■ The permission to sue the United States in a state court should be found only in clear and unambiguous language. In Minnesota v. United States, supra, it was contended that the statute there under consideration authorized suit in a court of the state. But the statute did not expressly give permission to sue in the state court. The court said (page 389 of 305 U. S., at page 296 of 59 S.Ct., 83 L.Ed. 235) : "There are persuasive reasons why that statute should not be construed as authorizing suit in a state court. It relates to Indian lands under trust allotments—a subject within the exclusive control of the federal government. The judicial determination of controversies concerning such lands has been commonly committed exclusively to federal courts."

■ Since Congress did not expressly or by clear implication authorize this action to be brought in a state court, the District Court of Rogers County was without jurisdiction. The state court lacking jurisdiction, this court is also without jurisdiction upon the removal, although if the action had been originally brought in this court, the court would have had jurisdiction. See Minnesota v. United States, supra, and cases there cited.

Having determined that the court does not have jurisdiction, it need not be decided here whether in a proper case service of notice on the Superintendent for the Five Civilized Tribes, as provided in Section 3 of the Act of April 12, 1926,

effectively makes the United States a party to the action. But see Fish v. Kennamer, 10 Cir., 37 F.2d 243; United States v. Mid-Continent Petroleum Corporation, 10 Cir., 67 F.2d 37; McKay v. Rogers, 10 Cir., 82 F.2d 795; Caesar v. Burgess, 10 Cir., 103 F.2d 503.

■ Finally the United States contends that the court lacks jurisdiction because the plaintiff is not proceeding in accordance with Section 15 of the Enid and Anadarko Act. It is urged specifically that the court does not have jurisdiction because a map of the proposed right of way has not been filed with the Secretary of the Interior and the Superintendent for the Five Civilized Tribes. See Section 15, Act of February 28, 1902, and Section 25, Act of April 26, 1906, supra. This contention is without merit. The sole requisite is to file a map or plat. Approval or consent of the Secretary of the Interior or the Superintendent for the Five Civilized Tribes is unnecessary. While the court would undoubtedly compel a map to be filed before condemnation would be granted, it seems clear that the mere failure to file such map would not deprive the court of jurisdiction.

Motion to dismiss is sustained, and the cause is hereby dismissed.