963

TOWN OF OKEMAH, OKL., v.
UNITED STATES et al.
No. 2850.

Circuit Court of Appeals, Tenth Circuit.
Feb. 18, 1944.

Rehearing Denied March 13, 1944.

Charles P. Gotwals, of Muskogee, Okl. (Arthur Cochran, of Okemah, Okl., on the brief), for appellant.

Fred W. Smith, of Washington, D. C., Atty., Department of Justice (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., and Norman MacDonald, of Washington, D. C., Atty., Department of Justice, on the brief), for appellees.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

The Town of Okemah, Oklahoma, filed a proceeding in the District Court of Okfuskee County, Oklahoma, to condemn three tracts of land which had been allotted to full-blood Creek Indians and which were restricted against alienation by the provisions of the Act of May 27, 1908, 35 Stat. 312.

Notice of the pendency of the action was served upon the Five Civilized Tribes in accordance with the provisions of the Act of April 12, 1926, 44 Stat. 239. The United States filed a petition to remove the proceeding to the United States District Court for the Eastern District of Oklahoma. After removal, the United States filed a motion to dismiss the action on the ground that it was an indispensable party and that it had not consented to be sued in the state court. From an order sustaining the motion and dismissing the action, the Town has appealed.

Section 3 of the Act of March 3, 1901, 31 Stat. 1058, 1084, 25 U.S.C.A. § 357, in part, reads:

"That lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee."

Section 357, supra, was construed in State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. In that case Minnesota brought an action in a court of the state to condemn a right-of-way for a highway over nine parcels of land which had been allotted in severalty to individual Indians by trust patents. The court held that the United States was an indispensable party defendant to the condemnation proceedings; that by § 3, supra, it had consented to be sued but only in a federal court and that since the state court had no jurisdiction of the suit against the United States, the federal court did not acquire jurisdiction on removal, and affirmed the judgment of the court of appeals directing dismissal of the action. In the Minnesota case, trust patents had been issued under which the legal title remained in the United States. In the instant case, patents had been issued to the restricted Indian allottees and the legal title was vested in the Indian owners but the lands were subject to restrictions against alienation.

■ Members of the Five Civilized Tribes who own allotted lands restricted against alienation are under the guardianship of the United States; they are wards of the Nation so far as the alienation of such lands is concerned. During the continuation of such guardianship, it is the right and the duty of the United States to enforce the restrictions designed for the security of the Indians by all appropriate means. "The national interest is not to be expressed in terms of property, or to be limited to the assertion of rights incident to the ownership of a reversion or to the holding of a technical title in trust." It has a governmental interest in the enforcement of the restrictions. It is not essential that it should have a pecuniary interest.[1] Where lands are held by members of the Five Civilized Tribes under patents in fee with restraints on alienation, a decree undertaking the alienation of the Indians' interest in the lands in a suit to which the United States is not a party has no binding effect and the United States may sue to cancel the decree and set aside the conveyance made pursuant thereto.[2] The United States is an indispensable party to any action wherein the relief sought would impair its governmental function to protect the allotted lands against alienation.[3]

Two methods have been employed to prevent the Indians from improvidently dis-

[1] Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820.

[2] Bowling and Miami Investment Co. v. United States, 233 U.S. 528, 534, 535, 34 S.Ct. 659, 58 L.Ed. 1080; Privett v. United States, 256 U.S. 201, 204, 41 S.Ct. 455, 65 L.Ed. 889; Sunderland v. United States, 266 U.S. 226, 232, 45 S.Ct. 64, 69 L.Ed. 259; State of Minnesota v. United States, 305 U.S. 382, 386, Note 1, 59 S.Ct. 292, 83 L.Ed. 235.

[3] United States v. Moore, 8 Cir., 284 F. 86, 90.

posing of their allotted lands. One is to issue a so-called trust patent declaring that the United States will hold the land for a designated period of 25 years in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and at the expiration of that period will convey the same to him, or his heirs, in fee, discharged of the trust. The other is to issue at once to the allottee a patent conveying the land to him in fee and imposing restrictions upon its alienation for 25 years or some other stated period. As respects both classes of allotments, the United States possesses a supervisory control over the land and may take appropriate measures to make sure that it inures to the sole use and benefit of the allottee and his heirs throughout the original or any extended period of restriction.[4]

We conclude, therefore, that the United States was an indispensable party to the condemnation proceedings.

Section 357, supra, by authorizing condemnation, conferred by implication permission to sue the United States.[5] But there is no provision by which the United States can be made a party to suits generally affecting restricted lands of members of the Five Civilized Tribes. However, the Act of April 12, 1926, provides that a party to a suit in a United States court in Oklahoma or in a state court of that state to which a restricted member of the Five Civilized Tribes or the restricted heirs or grantees of such an Indian are parties, as plaintiff, defendant, or intervenor, and claiming or entitled to claim title to or an interest in lands allotted to a citizen of the Five Civilized Tribes or the proceeds or profits therefrom, may serve written notice of the pendency of such suit upon the Superintendent of the Five Civilized Tribes; that the United States may appear in such cause within 20 days thereafter, or within such further time as the court may allow; that after such appearance or the expiration of the time allowed therefor, the proceedings and judgment will bind the United States and the parties thereto to the same extent as though no Indian land or question were involved;

that within 20 days after the service of the notice on the Superintendent, or within such further time as the court may, in its discretion, permit, the United States shall have the right to remove any such suit pending in a state court to the United States District Court; and that after removal, the cause shall proceed as if it had been originally commenced in the United States court. The manifest purpose of this statute was to make it possible to obtain a judgment which would be binding and conclusive as to the United States.[6]

The ultimate question here presented is whether suits to condemn lands allotted in severalty are within the purview of the Act of April 12, 1926. That depends on whether Congress intended to amend § 357 with respect to members of the Five Civilized Tribes by the Act of April 12, 1926, and permit such suits against such members to be brought in a state court and make the judgment in such a suit binding on the United States where notice is served on the Superintendent of the Five Civilized Tribes as provided in the Act of April 12, 1926.

The Act of April 12, 1926, is a general statute in the sense that it applies to all suits of the character therein described. Section 357, supra, is a special statute applying only to condemnation proceedings. Where there are two statutes upon the same subject, the earlier being special and the later general, unless there is an express repeal or an absolute incompatibility, the presumption is that the special is intended to remain in force as an exception to the general. Here, there was no express repeal and there is no absolute incompatibility, for both statutes can be given reasonable operation by the application of such presumption.[7]

By the Act of April 12, 1926, Congress dealt generally with suits affecting the title to or interest in lands allotted to the citizens of the Five Civilized Tribes which could not be brought against the United States because Congress had not given its consent thereto. It did not in terms consent that such suits might be brought against the United States but did provide that written notice of the pendency of such a suit

---

[4] United States v. Bowling, 256 U.S. 484, 486, 487, 41 S.Ct. 561, 65 L.Ed. 1054.

[5] State of Minnesota v. United States, 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235.

[6] Caesar v. Burgess, 10 Cir., 103 F.2d 503, 506.

[7] Washington v. Miller, 235 U.S. 422, 428, 35 S.Ct. 119, 59 L.Ed. 295; Niagara Fire Ins. Co. v. Raleigh Hardware Co., 4 Cir., 62 F.2d 705, 709.

might be served on the Superintendent of the Five Civilized Tribes, that the United States might appear in the suit, should it so elect, and that after such appearance or the expiration of the time allowed therefor, that the proceedings and judgment therein should bind the United States. By § 357, supra, Congress provided in effect that allotted lands restricted against alienation could be condemned but that the United States must be made a party to the condemnation proceeding and that such proceeding must be brought in a federal court. We do not think Congress intended by the Act of April 12, 1926, to so amend § 357, supra, so as to eliminate such requirements in condemnation proceedings.

It was suggested on oral argument that no method for service of process is provided by § 357, supra, or other applicable statutory provision. Such service may be made in the manner prescribed by Rule 4 (d) (4) of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c.

The judgment is affirmed.