UNITED STATES, Plaintiff-Appellee,

and

State of Idaho, Department of Lands, Intervenor Plaintiff,

v.

E. B. WEISS, James Click, Sr., Orral W. Lake, H. G. King and Orson Baier, Defendants-Appellants.

No. 78–2800.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1980.

Decided April 13, 1981.

Barry Marcus, Boise, Idaho, for defendants-appellants.

Jacques B. Gelin, Dept. of Justice, Washington, D. C., for plaintiff-appellee; Maryann Walsh, U. S. Dept. of Justice, Washington, D. C., on brief.

Before ANDERSON and ALARCON, Circuit Judges, and WILLIAMS, District Judge.*

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

J. BLAINE ANDERSON, Circuit Judge:

Appellants contend that the district court erred in granting summary judgment to the United States and in enjoining them from conducting any mining activity which could result in the disturbance of surface resources until they had complied with regulations under 36 CFR 252. We affirm the judgment of the district court.

*BACKGROUND*

The appellants are owners of unpatented placer mining claims located within the St. Joe National Forest in Idaho. They were informed by the Forest Service that regulations had been promulgated which required that they file an operating plan for their mining operations. While the appellants had been in contact with the Forest Service regarding their operations, they had not signed and filed a final plan of operations nor had they submitted a bond which the Forest Service required pursuant to the regulations.

The United States filed a complaint in district court to enjoin the appellants until an approved plan of operations had been filed, and a $2,000 bond was posted. Finding no genuine issue of material fact, the district court granted summary judgment to the United States and enjoined the appellants as requested.

The regulations in question are 36 CFR 252, which were promulgated by the Secretary of Agriculture on August 28, 1974. 36

CFR 252 sets forth rules and procedures which are intended to regulate the use of the surface of national forest land used in connection with mining operations authorized by the United States mining laws. 36 CFR § 252.1. The purpose of the regulations is "to minimize adverse environmental impacts on National Forest System surface resources" that can be caused by mining, while, at the same time, not interfering with the rights conferred by the mining laws. *Id.* Under the regulations, the Forest Service must be notified of any mining-related operation that is likely to cause a disturbance of surface resources. The initiation or continuation of such an operation is subject to the approval of the Forest Service.

Appellants' contention on appeal is that the regulations have not been promulgated pursuant to adequate statutory authority. They argue that the Organic Administration Act of 1897, 30 Stat. 36 and 35, 16 U.S.C. §§ 478 and 551, do not authorize the adoption of these regulations. Therefore, they argue that the regulations have no force and effect.

*DISCUSSION*

36 CFR 252 has been promulgated by the Secretary of Agriculture under the authority of the Organic Administration Act of June 4, 1897,[1] specifically, 30 Stat. 36 and 35, 16 U.S.C. §§ 478 and 551.[2] These provi-

---

1. Congressional authority to enact laws affecting public lands is derived from the Property Clause of the Constitution, Art. IV, § 3, cl. 2. *Kleppe v. New Mexico*, 426 U.S. 529, 535, 539, 96 S.Ct. 2285, 2289, 2291, 49 L.Ed.2d 34 (1976).

2. *Section 551, 30 Stat. 35, as amended, provides that:*
   "The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 of this title, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the provisions of sections

473 to 478 and 479 to 482 of this title or such rules and regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both. Any person charged with the violation of such rules and regulations may be tried and sentenced by any United States magistrate specially designated for that purpose by the court by which he was appointed, in the same manner and subject to the same conditions as provided for in section 3401(b) to (e) of Title 18."
Section 478, 30 Stat. 36, provides that:
   "Nothing in sections 473 to 478, 479 to 482 and 551 of this title shall be construed as prohibiting the egress or ingress of actual settlers residing within the boundaries of national forests, or from crossing the same to and from their property or homes; and such wagon roads and other improvements may be constructed thereon as may be necessary

sions are part of the statutory scheme which covers the national forests and which confers administration of the national forests upon the Secretary of Agriculture.[3]

Under § 478 and 551, the Secretary may make rules and regulations for the protection and preservation of the national forests, and persons entering upon national forest land must comply with those rules and regulations. The authority of the Secretary to regulate activity on national forest land pursuant to these sections has been upheld in a variety of non-mining instances. *See United States v. Grimaud*, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1910) (regulations concerning sheep grazing in national forests); *McMichael v. United States*, 355 F.2d 283 (9th Cir. 1965) (regulations prohibiting motorized vehicles in certain areas of national forest); *Mountain States Telephone & Telegraph Co. v. United States*, 204 Ct.Cl. 521, 499 F.2d 611 (1974) (regulations requiring special use permit and payment of fees for a microwave relay facility within a national forest). *Sabin v. Butz*, 515 F.2d 1061 (10th Cir. 1975) (regulations setting up a permit system for ski operations and instructions on national forest land). That authority has also been sustained to prohibit non-mining activity upon unpatented mining claims. *United States v. Rizzinelli*, 182 F. 675 (D. Idaho 1910). However, the precise issue of whether these statutory provisions empower the Secretary to regulate mining operations on national forest land does not appear to have been decided before.[4] *See United States v. Richardson*, 599 F.2d 290, 293 (9th Cir.), *cert. denied*, 444 U.S. 1014, 100 S.Ct. 663, 62 L.Ed.2d 643 (1980).

■ We believe that the Act of 1897, 16 U.S.C. §§ 478 and 551, granted to the Secretary the power to adopt reasonable rules and regulations regarding mining operations within the national forests.

The national forests are to be open for entry "for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof." 16 U.S.C. § 478. However, "[s]uch persons must comply with the rules and regulations covering such national forests." *Id.* Thus it is clear that persons entering the national forests to prospect, locate, and develop mineral resources therein are subject to and must comply with the rules and regulations covering the national forests.

The Act of 1897, 30 Stat. 35, 16 U.S.C. § 551, as amended, grants authority to the Secretary to make "rules and regulations and [to] establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; . . ." The section specifically states that the Secretary shall make provision for the protection of the national forests against destruction by fire and depredation. Thus the Secretary has been given the authority to promulgate reasonable rules and regulations which will protect the national forests and which will help to carry out the purposes for which the national forests were created.

The regulations in question, 36 CFR 252, were designed to minimize adverse environmental impacts on the surface resources of the national forests. Such regulations were authorized by the Act of 1897.

■ The fact that these regulations have been promulgated many years after the enactment of their statutory authority does

---

to reach their homes and to utilize their property under such rules and regulations as may be prescribed by the Secretary of Agriculture. Nor shall anything herein prohibit any person from entering upon such national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof. Such persons must comply with the rules and regulations covering such national forests.

**3.** See 16 U.S.C. §§ 471–583i.

**4.** In recent Ninth Circuit cases concerning 36 CFR 252, its validity has been accepted without discussion. See *United States v. Richardson*, 599 F.2d at 292; *United States v. Curtis-Nevada Mines*, 415 F.Supp. 1373, 1379 (E.D.Cal.), *affirmed in relevant part*, 611 F.2d 1277 (9th Cir. 1980); *Ventura County v. Gulf Oil Corp.*, 601 F.2d 1080, 1084 (9th Cir.), *aff'd*, 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980).

not destroy the Congressional authorization given. The failure of an executive agency to act does not forfeit or surrender governmental property or rights. *United States v. California*, 332 U.S. 19, 39–40, 67 S.Ct. 1658, 1668–1669, 91 L.Ed. 1889 (1946); *United States v. Southern Pacific Transp. Co.*, 543 F.2d 676, 697 (9th Cir. 1976). In this situation, a mining claimant may not claim any sort of prescriptive right which would prevent the government from protecting its superior vested property rights.

In analyzing the issue before us, we are keenly aware of the important and competing interests involved. Mining has been accorded a special place in our laws relating to public lands. The basic mining law of May 10, 1872, 17 Stat. 91, 30 U.S.C. §§ 21–54, encouraged the prospecting, exploring, and development of mineral resources on public lands. "The system envisaged by the mining laws was that the prospector could go out into the public domain, search for minerals and upon discovery establish a claim to land upon which the discovery was made." *United States v. Curtis-Nevada Mines, Inc.*, 611 F.2d 1277, 1281 (9th Cir. 1980). So long as they complied with the laws of the United States and applicable state and local laws, locators of mining locations were given "the exclusive right of possession and enjoyment of all the surface included within the lines of their location," along with the subsurface rights. 30 U.S.C. § 26.

On the other hand, our national forests have also been a fundamental part of the use of our public lands. National forests were established to improve and protect our forest land, to secure "favorable conditions of water flows, and to furnish a continuous supply of timber for the use and necessities of citizens of the United States; ..." 16 U.S.C. § 475. The object of the Organic Administration Act of 1897 was "to maintain favorable forest conditions, without excluding the use of reservations for other purposes. They are not parks set aside for nonuse, but have been established for economic reasons. 30 Cong.Rec. 966 (1897) (Cong. McRae)." *United States v. New Mexico*, 438 U.S. 696, 708, 98 S.Ct. 3012, 3018, 57 L.Ed.2d 1052 (1978).

Moreover, while locators were accorded the right of possession and enjoyment of all the surface resources within their claim, the "primary title, the paramount ownership is in the government ... it retains the title, with a valuable residuary and reversionary interest." *United States v. Rizzinelli, et al.*, 182 F. at 681 (D. Idaho, 1910). "The paramount ownership being in the government, and it also having a reversionary interest in the possessory right of the locator, clearly it has a valuable estate which it is entitled to protect against waste and unlawful use." *Id.* at 684.

We believe that the important interests involved here were intended to and can coexist. The Secretary of Agriculture has been given the responsibility and the power to maintain and protect our national forests and the lands therein. While prospecting, locating, and developing of mineral resources in the national forests may not be prohibited nor so unreasonably circumscribed as to amount to a prohibition, the Secretary may adopt reasonable rules and regulations which do not impermissibly encroach upon the right to the use and enjoyment of placer claims for mining purposes.[5]

The judgment of the district court is AFFIRMED.

---

**5.** We emphasize that the reasonableness of the regulations has not been put into issue. Although authority exists for the promulgation of regulations, those regulations may, nevertheless, be struck down when they do not operate to accomplish the statutory purpose or where they encroach upon other statutory rights. Appellants have not attempted to comply with the regulations; therefore, those issues are not before us on this appeal. *Compare, Agins v. City of Tiburon*, 447 U.S. 255, 258–262, 100 S.Ct. 2138, 2140–2142, 65 L.Ed.2d 106, 111–112 (1980).