**GRANITE ROCK COMPANY, a corporation, Plaintiff,**

v.

**CALIFORNIA COASTAL COMMISSION, an administrative agency of the State of California, et al., Defendants.**

**No. C–83–5137–WWS.**

United States District Court, N.D. California.

May 21, 1984.

Barbara R. Banke, Goldstein, Barceloux & Goldstein, San Francisco, Cal., for plaintiff.

Linus Masouredis, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This action presents important questions of statutory interpretation and federal preemption arising from the interrelationship among two federal statutes, the Coastal Zone Management Act, 16 U.S.C. §§ 1451 *et seq.* ("CZMA") and the Mining Act of 1872, 30 U.S.C. §§ 21 *et seq.* ("Mining Act"), federal regulations issued by the National Forest Service, 36 C.F.R. §§ 228.1 *et seq.* (1983), and a state statute, the California Coastal Act, Cal.Pub.Res.Code §§ 30000 *et seq.* ("CCA"). At issue is whether plaintiff Granite Rock Company must secure a permit from the California Coastal Commission ("CCC") to implement its Plan of Operations, already approved by the Forest Service, for open-pit limestone mining on federally-owned property in Los Padres National Forest.

Plaintiff seeks (1) to enjoin defendant officials of the CCC[1] from compelling it to comply with the permit requirement of the CCA and (2) to obtain corresponding declaratory relief under 28 U.S.C. § 2201. It claims that the CZMA, under the auspices of which the CCA was enacted, expressly excludes federally-owned lands from the coastal zone and that application of the CCA to its mining operations is preempted by the Mining Act and the Forest Service Regulations. Defendant CCC officials answer that the CZMA and thus the CCA do not exclude land over which the federal government's discretion is limited by the unique property rights granted by the Mining Act to holders of patentable mining claims. Defendants further contend that the Mining Act cannot preempt the CCA which is enacted "pursuant to" the federal CZMA. Finally, they argue that even if all federal land is excluded from the coastal zone, neither the Mining Act nor the CZMA preempts the state's inherent police power to regulate private mining activity on federal land. Both parties agree that there are no material facts in dispute, and plaintiff has moved for summary judgment.

## I. BACKGROUND.

Because of the complex web of statutes and regulations at issue in this action, it is helpful at the outset to briefly note their major provisions.

### A. *The Mining Act.*

The Mining Act grants private citizens the right to enter federal lands to explore for mineral deposits, *see* 30 U.S.C. § 22. Until a person has located a valuable mineral deposit, he has a limited possessory interest in the land he occupies against third parties but not against the United States; the government may bar entry to such person at any time. A person who locates a valuable mineral deposit acquires a significantly more substantial interest in the surface land as long as he properly stakes a claim and complies with other statutory requirements, *see id.* § 26. For example, the claim holder must prepare locational records and must expend at least $100 of labor on the claim each year, *id.* § 28. If these requirements are met and the claim is thus perfected, its locator "shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations," *id.* § 26, even as against the United States which nevertheless retains title to the land.

Finally, the holder of a perfected mining claim may secure a patent to the land by demonstrating his location of a valuable mining claim and complying with other requirements of the Mining Act and regulations enacted thereunder, *see* 43 C.F.R. §§ 3861.1 *et seq.* (1983), including payment to the government of $5.00 per acre, 30 U.S.C. § 29. If these requirements are satisfied, issuance by the government of a patent to the land is mandatory, and legal title passes to the patent-holder.

---

1. The CCC itself was originally named as a defendant but was dismissed by this Court based on its immunity from suit under the Eleventh Amendment. *See Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

B. *Forest Service Regulations.*

Regulatory power over surface resources of national forest system lands is granted to the Secretary of Agriculture by the Organic Administration Act of 1897, 16 U.S.C. § 471 ("OAA"). Pursuant to that authority, the National Forest Service, a branch of the Department of Agriculture, issued regulations in 1974 governing "use of the surface" of national forest system lands in connection with operations authorized by the Mining Act, 36 C.F.R. § 228.1 (1983). These regulations, which are designed to "minimize [the] adverse environmental impacts" of mining operations on forest land, require that holders of unpatented mining claims submit for approval by the District Ranger a Plan of Operations, *id.* § 228.4. In addition to describing precisely the scope of the intended operations, the Plan must demonstrate proposed compliance with applicable state and federal environmental standards relating to, among other things, air and water quality, solid waste disposal, preservation of scenic values, and fisheries and wildlife habitat maintenance, *id.* § 228.8. Operations are then to be conducted in accordance with the approved Plan, *id.* § 228.5.

C. *The CZMA.*

The CZMA, enacted in 1972 and amended in 1976, seeks to preserve and develop the nation's coastal zones, 16 U.S.C. §§ 1451–1452, by providing monetary assistance to states that develop and implement coastal Management Programs consistent with its standards, *id.* §§ 1451, 1453(g). After the Secretary of Commerce has determined a state program to comply with the requirements set forth in the CZMA, *id.* §§ 1454–1455, the state receives federal grants of up to 80% of the cost of administering its program, *id.* § 1455(a).

The CZMA envisions state management only of land use *within* the coastal zone: thus, "Management Program" is defined to include "standards to guide public and private uses of land and waters in the coastal zone," *id.* § 1453(12), "land use" is defined as "activities which are conducted in, or on the shorelands within, the coastal zone," *id.* § 1453(10), and the Management Programs are required to include "[a] definition of what shall constitute permissible land uses and water uses within the coastal zone..." *id.* 1454(b)(2). The "coastal zone" is defined in § 1453(1), the provision at issue in this action, to include coastal waters and adjacent shorelands but excludes "lands the use of which is by law subject solely to the discretion of or which is held in trust by the Federal Government, its officers or agents."

The Act also seeks to promote cooperation between federal and state agencies engaged in activities within or *affecting* the coastal zone. Thus, the CZMA requires a showing of "consistency" with state Management Programs of (1) activities conducted or supported by a Federal agency and "directly affecting the coastal zone," *id.* § 1456(c)(1), (2) development projects undertaken by a Federal agency in the coastal zone, *id.* § 1456(c)(2), and (3) activities for which a Federal permit or license is required and which affect land or water uses in the coastal zone, *id.* § 1456(c)(3)(A). Under the statutory scheme, for example, an activity outside of but affecting the coastal zone by a federal permittee would not be subject to direct regulation by the state's Management Program but would be subject to "consistency review" by the state under § 1456(c)(3)(A).

D. *The CCA.*

In 1976 the California legislature enacted the CCA which was approved by the Secretary of Commerce pursuant to the CZMA in 1977. Under the Act, a person wishing to undertake any "development," which is defined to include mining and construction, Cal.Pub.Res.Code § 30106, in the coastal zone must secure a permit from a local or regional commission or the CCC, *id.* § 30600. The permit shall be issued if the proposed development conforms with the requirements set forth in §§ 30200 *et seq.* which address such concerns as ocean access, marine and land resources, and scenic and visual qualities. Moreover, the CCA

provides that it shall constitute the state's Management Program for purposes of the CZMA,

provided, however, that within federal lands excluded from the coastal zone pursuant to the Federal [CZMA], the State of California shall, consistent with applicable federal and state laws, continue to exercise the full range of powers, rights, and privileges it now possesses or which may be granted,

*id.* § 30008.[2]

E. *This Action.*

Plaintiff is presently engaged in commercial mining of a valuable five to seven-acre quarry[3] of high calcium whiting grade limestone on and around Mount Pico Blanco in the Big Sur region of Los Padres National Forest. Although from 1959 to 1980, plaintiff removed relatively small samples of limestone for mineral analysis, it has been extracting substantial amounts since 1981 for purposes of resale to private purchasers. Its mining activity in Big Sur, conceded to be an area of great scenic beauty, includes blasting and opening a quarry, constructing and improving roads, building a bridge, boring test holes and conducting core drilling, improving a water storage system, and dumping rock waste in a disposal area.

Although plaintiff has not sought to acquire patents to the land, there is no dispute that it has perfected its mining claims on Mount Pico Blanco by locating a valuable mineral deposit, by complying with locational requirements, and by carrying out at least $100 worth of labor on the claims since 1959. Accordingly, as required by the Forest Service Regulations, plaintiff in 1981 submitted a Plan of Operations for approval by the District Ranger covering the period from 1981 to 1986.[4] In

February 1981, after preparation of an Environmental Assessment, plaintiff's Plan was accepted with certain modifications regarding monitoring and mitigation measures and with the proviso that plaintiff be responsible "for obtaining any necessary permits required by State and/or county laws, regulations and/or ordinance."

Plaintiff's mining claims clearly lie within the geographic boundaries of the "coastal zone" as defined by the CZMA and the CCA. By a letter of October 17, 1983, the District Director of the CCC informed plaintiff that it needed to secure a permit for its mining operations from the CCC pursuant to the provisions of the CCA. The letter also stated that approval by the Forest Service constituted the granting of a federal permit within the meaning of § 1456(c)(3) of the CZMA and that the Plan of Operations for 1981–1986 was thus subject to "consistency review" by the CCC pursuant to that provision.

Plaintiff originally brought this action in October 1983 to enjoin the CCC's officials both from requiring a coastal development permit under the CCA and from requiring consistency review of its Plan of Operations under the CZMA. In its answer, defendants conceded that they had effectively waived the requirement of consistency review by waiting more than six months before notifying the Forest Service of any objections to its approval of the Plan, 16 U.S.C. § 1456(c)(3). Plaintiff now seeks to enjoin only enforcement of the permit requirement; defendants argue that the Court should find that any *future* Plan of Operations approved by the Forest Service or any amendments to the present Plan must be submitted for consistency review.

Although the parties diverge substantially in the way they frame the issues

---

**2.** The provision when originally enacted in 1976 read:

provided, however, that pursuant to the Federal [CZMA], excluded from the coastal zone are lands the use of which is by law subject solely to the discretion of or which is held in trust by the federal government, its officers or agents.

It was amended in 1978.

**3.** California estimates the value of this quarry at about $15,000.

**4.** No Plan of Operations was required for the "remov[al of] small samples or specimens" in which plaintiff was engaged from 1959 to 1980, 36 C.F.R. § 228.4(1)(ii)–(iii) (1983).

presented by this action in their papers, the Court concludes that two principal questions are raised. First, does the exclusionary provision of § 1453(1) of the CZMA, incorporated by the CCA in Cal.Pub.Res. Code § 30008, extend to federal lands over which the federal government's discretion is limited by plaintiff's unpatented mining claims? If it does not, is the CCA permit requirement nevertheless preempted by the Mining Act or by the regulations issued by the Forest Service? Because the Court concludes that plaintiff's mining claims are not excluded from the coastal zone and that the CCA permit requirement is not preempted, it need not reach defendants' further contention that the permit requirement is a valid exercise of the state's inherent police power regardless of any exclusion under the CZMA. It also does not reach the applicability of the CZMA's "consistency review" provision to plaintiff's future Plans of Operations, an issue clearly not yet ripe for adjudication.

## II. EXCLUSIONARY PROVISION OF § 1453(1).

■ Whether the federal land on which plaintiff holds perfected mining claims under the Mining Act is excluded from the provisions of the CZMA and the CCA is a question of interpretation of § 1453(1) of the federal Act. In determining the scope of the exclusionary provision, the Court looks first to its language: "[i]f the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive,'" *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), *citing Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

■ Section 1453(1) excludes from the "coastal zone" two categories of land: those "the use of which is by law subject *solely* to the discretion of ... the Federal Government," (emphasis added), and those "the use of which ... is held in trust by the Federal Government." [5] On its face, the first category does not include the land at issue here. Federal property encumbered by perfected mining claims is by law *not* subject solely to the government's discretion. The holder of such a claim has an exclusive possessory interest in the land, 30 U.S.C. § 26, *Union Oil Co. v. Smith*, 249 U.S. 337, 348–49, 39 S.Ct. 308, 310–11, 63 L.Ed. 635 (1919): this "unique form of property," *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 335, 83 S.Ct. 379, 382, 9 L.Ed.2d 350 (1963), is "property in the fullest sense of that term," *Wilbur v. Krushnic*, 280 U.S. 306, 316–17, 50 S.Ct. 103, 104–05, 74 L.Ed. 445 (1930), and cannot be taken by the United States without payment of compensation, *Freese v. United States*, 226 Ct.Cl. 252, 639 F.2d 754, 757, *cert. denied*, 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 103 (1981).

■ Plaintiff argues that its interest in its unpatented mining claims on national forest land is subject to governmental discretion pursuant to the Forest Service Regulations. But those regulations do not, and under their enabling statute cannot, impermissibly encroach upon the right to exploit placer claims for mining purposes, *see* OAA, 16 U.S.C. § 478 ("Nor shall anything herein prohibit any person from entering upon such national forests for all proper and lawful purposes, including that of prospecting, locating, and developing the mineral resources thereof."); *United States v. Weiss*, 642 F.2d 296, 299 (9th Cir.1981).

■ Similarly faulty is plaintiff's contention that the government wields discretion under the Surface Resources and Multiple Use Act of 1956, 30 U.S.C. §§ 612 *et seq.* ("SRMUA"),[6] which restricts use of

5. The Court notes that the parties misread the provision to exclude *"lands ... which is* held in trust by the Federal Government...." (emphasis added). *That reading is not grammatical.* The correct and more reasonable reading is

"lands *the use of which is* ... held in trust by the Federal Government...." (emphasis added).

6. Section 612 reads in pertinent part:

mining claims to mining and incidental operations and grants the United States and its licensees the right to manage surface resources. *See also* 43 C.F.R. § 3712.1(b) (1983) (regulation by Bureau of Land Management ("BLM") implementing SRMUA). Although the SRMUA does "open up the public domain to greater, more varied uses," *United States v. Curtis-Nevada Mines, Inc.,* 611 F.2d 1277, 1285 (9th Cir. 1980) (SRMUA grants general public right of free access to land for recreational use of surface resources even where no federal permit required), the statute "was not intended ... to interfere with the historical relationship between the possessor of a mining claim and the United States," *id.* at 1281. Section 612(b) expressly provides that no use of surface resources by the United States or its licensees may materially interfere with mining or incidental operations, and a mining claimant can sue to enjoin any such interference, *Curtis-Nevada,* 611 F.2d at 1286. In light of the explicit reservation of rights under the Mining Act in the Forest Service Regulations and the SRMUA, it cannot be found that the United States has *sole* discretion over the use of lands subject to plaintiff's valid mining claims.[7]

■ Moreover, as holder of a valid mining claim, plaintiff need only comply with certain procedural requirements set forth in the Mining Act and regulations promulgated by the BLM, 43 C.F.R. §§ 3861.1 *et seq.* (1983), as well as pay a set fee of $5.00 per acre to acquire title to the land and thus withdraw it from regulation by the Forest Service and the SRMUA. Transfer of the property is *non-discretionary:* the government has no choice but to pass title upon tender of payment and procedural compliance, *see South Dakota v. Andrus,* 614 F.2d 1190, 1193 n. 3 (8th Cir.), *cert. denied,* 449 U.S. 822, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980) ("the actions taken by the Secretary of the Interior in processing an application for patent by such claimant are not discretionary; issuance of a patent can be compelled by court order"). Plaintiff's insistence that patent procurement may be complex, time-consuming and expensive is irrelevant to the question of governmental control: the special property interest created by the Mining Act in valid and patentable claims simply does not fit within § 1453(1)'s exclusion of lands subject to federal discretion.

Plaintiff also contends that its claims fall within the second prong of the exclusionary clause because historically the government holds *all* federal lands in trust for the people, *see, e.g., United States v. California,* 332 U.S. 19, 40, 67 S.Ct. 1658, 1669, 91 L.Ed. 1889 (1947); *Curtis-Nevada,* 611 F.2d at 1283; *United States v. Ruby Co.,*

---

(a) Any mining claim hereafter located under the mining laws of the United States shall not be used, prior to issuance of patent therefor, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto.

(b) Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof (except mineral deposits subject to location under the mining laws of the United States). Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land: *Provided, however,* That any use of the surface of any such mining claim by the United States, its permittees or licensees, shall

be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto. . . .

7. Plaintiff also points to the Multiple Mineral Development Act of 1954, 30 U.S.C. §§ 521 *et seq.,* the Mining Claims Occupancy Act of 1954, *id.* §§ 701 *et seq.,* and the Mine Health and Safety Act, *id.* §§ 801 *et seq.* The first Act, however, merely provides for coordination of operations under federal mineral leases and unpatented mining claims and requires each to be conducted so as not to materially interfere with the other, *id.* § 526(b)–(c). The second Act authorizes the sale of federal land to qualified holders of unpatented mining claims found to be invalid. The third Act establishes mandatory health and safety standards for miners. None of these statutes bestows on the United States sole discretion over the use of federal land subject to valid mining claims.

588 F.2d 697, 704–05 (9th Cir.1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). Defendants counter that the clause is a term of art for Indian lands "held in trust" by the United States pursuant to the unique fiduciary relationship between the Indians and the government, *see, e.g., United States v. Bowling*, 256 U.S. 484, 486–87, 41 S.Ct. 561, 562, 65 L.Ed. 1054 (1921); *United States v. Chase*, 245 U.S. 89, 99–100, 38 S.Ct. 24, 27, 62 L.Ed. 169 (1917); *Santa Rosa Band of Indians v. Kings County*, 532 F.2d 655, 666 (9th Cir.1975), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 731, 50 L.Ed.2d 748 (1977).

■ The Court notes first that Congress has used the phrase "trust lands" with reference to Indian lands in a number of other federal statutes, *see* 16 U.S.C. § 583f ("trust or restricted Indian land"); 28 U.S.C. § 2409a (same). More significantly, plaintiff's reading would render the exclusionary clause redundant, and statutes should generally not be construed to render any provision surplusage, *Co Petro Marketing Group, Inc. v. Commodity Futures Trading Comm'n*, 680 F.2d 566, 569–70 (9th Cir.1982). The category of lands subject to the *sole* discretion of the United States would be included within "lands held in trust" were that phrase interpreted to mean all federal lands. Surplusage is eliminated if the phrase is read to refer to Indian lands since they are plainly not subject to the government's sole discretion, and the second clause then complements rather than subsumes the first. Plaintiff's mining claims are thus not excluded as lying on land held in trust by the Federal Government.

Even if the § 1453(1) exclusion is found to be ambiguous, consideration of the congressional intent behind and administrative interpretation of the provision leads to no contrary conclusion. From among the sparse references in the legislative history, plaintiff cites the statement in Conference Committee Report 92–1544, *reprinted in Congressional Research Service, Legislative History of the CZMA of 1972 as Amended* at 443, 455 (1976) (hereinafter *Legislative History* ), that

> [t]he conferees also adopted the Senate language in this section which made it clear that Federal lands are not included within a State's coastal zone. As to the use of such lands which would affect a State's coastal zone, the provisions of section [1456(c) ] would apply.

It also points to Congressman Mosher's observation that

> [t]he final version in no way affects the jurisdictional responsibilities of the [EPA], any other federal agency, or the Department of the Interior in regard to the administration of federal lands, since the conferees have specifically eliminated those land areas from the definition of coastal zone,

118 Cong.Rec. 35548 (Oct. 12, 1972).

Although the above references might suggest that § 1453(1) was intended to exclude all federal lands, it is clear from these and other statements and from the discernible objective of the exclusion that Congress sought to avert state interference with *federal use* of federal land and not with private activity subject to only limited government control. Senate Report No. 92–753 U.S.Code Cong. & Admin.News 1972, p. 4776, *reprinted in Legislative History, supra,* at 193, 200–01, notes that the Act does not "extend[ ] State authority to land subject solely to the discretion of the Federal Government such as national parks, forests, and wildlife refuges, Indian reservations and defense establishments." Moreover, Congressman Mosher's statement expresses concern that control by federal agencies not be diminished: where private activity even on federal land is not subject to the discretion of some department or agency, the basis for the exclusion disappears. *See also* Sen.Rep. No. 91–1435, 91st Cong., 2d Sess. 38–39 ("Federal lands are excluded in order that the Federal Government's *independence in the management of its lands* will not be compromised." [emphasis added]).

Generalized references to "federal lands" were based on the assumption, almost al-

ways true, that the government wields sole discretion over the use of federal land: it is reasonable to conclude that public lands beyond the scope of federal control were not what the legislators had in mind. But the Mining Act creates precisely this kind of unanticipated use of federal land, a "unique form of property" to which the government holds nothing but legal title. Congress's concern with protecting "federal jurisdiction" is not advanced by excluding from state coastal regulation private activity that is not within the federal government's discretion to prevent.

This reading of the statutory history is buttressed rather than negated by the August 10, 1976, letter of the Assistant Attorney General, Office of Legal Counsel, United States Department of Justice, referred to in the regulations promulgated by the National Oceanic and Atmospheric Administration ("NOAA"), 15 C.F.R. §§ 920.1 *et seq.* (1984), pursuant to the CZMA and relied on by plaintiff, *see id.* § 920.2(b). Not only does the letter make clear that "lands held in trust" refers to Indian lands [8] but it expressly defines the "statutory test for exclusion" as "discretion regarding use of the land." Finally, plaintiff gains no additional support from the dictum in *Secretary of the Interior v. California,* — U.S. ——, 104 S.Ct. 656, 662, 78 L.Ed.2d 496 (1984), that the "exclusion [reaches] federal parks, military installations, Indian reservations, and other federal lands that would lie within the coastal zone but for the fact of federal ownership." That decision concerned the "consistency review" provisions of the Act, and the Supreme Court merely assumed in passing that federally-owned

land was subject to the government's sole discretion. As has been noted, that generally valid assumption does not apply to perfected mining claims under the Mining Act, and *Secretary of the Interior* cannot be read to the contrary.

In sum, the CZMA sought to encourage state management of activities within the nation's coastal regions. Although Congress stopped short of subjecting federal use of public lands to direct state regulation, it did require that federally supported or licensed activity affecting the coastal zone be "consistent" with state Management Programs. But it did not mean to shield from direct state regulation purely private activity such as commercial mining operations on federal land which are not subject to ultimate federal control. Had it so wished, Congress could have simply excluded all federally-owned lands from the coastal zone. This it did not do, and if the "sole discretion" language of § 1453(1) is not to be stripped of meaning, plaintiff's mining activity cannot be found to fall within its scope.[9]

## III. FEDERAL PREEMPTION.

Plaintiff argues that even if the coastal zone is held to include the federal lands subject to its mining claims, regulation pursuant to the CCA, a state statute, is preempted by the federal Mining Act and the Forest Service regulations. Defendants respond merely that there is no state-federal conflict because the CZMA "converts the state Coastal Act into a federal standard that has the dignity of federal law in a cooperative federalism program," Def's Brief at 14.

---

**8.** The letter states at page 4: *"4. Trust lands.* Indian lands owned by the United States have been held to be owned in trust for Indian tribes or for individual Indians" (citations omitted).

**9.** The argument that activities subject to consistency review under the CZMA and to direct regulation under a state's Management Program are mutually exclusive and that the Plan of Operations cannot be subject to both is without merit. First, the Court does not here reach the issue of whether plaintiff must submit its Plan of Operations to consistency review under § 1456(c)(3)(A). Second, nothing in the statuto-

ry language supports plaintiff's reading. Activity by a federal licensee in a state coastal zone, for example, would clearly be subject to both kinds of regulation. The consistency review provision is somewhat broader than direct state regulation because it applies to activities affecting the coastal zone and somewhat narrower because it applies only to federally supported or licensed activities. But there is no basis for finding that an activity subject to consistency review is for that reason alone shielded from direct state regulation.

■ Defendants misconceive the "cooperative" scheme established by the CZMA. The Act encourages state regulation of the coastal zone by granting funds for the implementation of approved state programs and subjecting activities affecting the coastal zone by federal agencies and licensees to "consistency review" under § 1456. It does not otherwise federalize states' Management Programs. There is no doubt that Congress can, if it so chooses, enact federal requirements which incorporate state regulatory standards, *see, e.g., Chevron, U.S.A., Inc. v. Hammond,* 726 F.2d 483, 489–90 (9th Cir.1984) (Clean Water Act adopts state permit requirements), but nothing in the CZMA or in the NOAA's regulations purports to "convert" state Management Programs into federally mandated standards. Rather, the Statement of Congressional Findings "encourage[s] the states to exercise *their full authority* over the lands and waters in the coastal zone ...," 16 U.S.C. § 1451(i). In return for developing programs consistent with federal policies and in accordance with the recommendations of federal agencies, states are granted monetary assistance and "consistency review" power over federal agencies' and licensees' activities; they are not cloaked with federal authority to directly regulate private activity by instituting permit requirements in conflict with federal statutes or violative of federally-bestowed rights.

Moreover, the CZMA no where provides for preemption of conflicting federal laws even with regard to its "consistency review" provisions. Rather, § 1456(e)(2) provides that the Act shall not be construed as "superseding, modifying or repealing existing laws applicable to the various Federal agencies...." With regard to this provision, Congressman Mosher stated categorically that the Act "does not supersede, modify or repeal existing federal law," 118 Cong.Rec. 26479 (Aug. 2, 1972). Thus, defendants can hardly rely on the CZMA to argue that its state-enacted Management Program necessarily trumps federal rights granted under the Mining Act.

That the CZMA does not give preclusive federal effect to the state's Management Program does not compel the conclusion, however, that the Mining Act preempts the CCA's permit requirement. Plaintiff bases its claim of federal preemption essentially on three grounds. First, it argues that, as a general rule, states may not regulate activities conducted wholly on federal property. Second, it contends that even if the State retains legislative jurisdiction over federal forest lands, the Mining Act preempts regulation of its mining operations. Finally, it claims that the approval required by the Forest Service pursuant to its jurisdiction over the national forests under the OAA "occupies the field" of mining regulation and displaces both parallel and conflicting state requirements.

### A. *Federal Enclaves.*

■ Pursuant to Article I, § 8, cl. 17 of the Constitution, the federal government can acquire exclusive or partial legislative jurisdiction by consensual acquisition of land or by a state's subsequent cession of authority, *Paul v. United States,* 371 U.S. 245, 265, 83 S.Ct. 426, 438, 9 L.Ed.2d 292 (1963). With regard to such federal enclaves, "where 'Congress does not affirmatively declare its instrumentalities or property subject to regulation,' 'the federal function must be left free' of regulation," *Hancock v. Train,* 426 U.S. 167, 179, 96 S.Ct. 2006, 2012, 48 L.Ed.2d 555 (1976). *See also EPA v. State Water Resources Control Board,* 426 U.S. 200, 211, 96 S.Ct. 2022, 2027, 48 L.Ed.2d 578 (1976).

■ Plaintiff does not, and cannot, assert, however, that its mining operations on federal land somehow convert it into a federal instrumentality. Nor does plaintiff claim that the national forest on which its mining claims lie is a "federal enclave" comparable to a fort or military reservation and subject solely to federal legislative jurisdiction. *See, e.g., United States v. County of Fresno,* 429 U.S. 452, 455, 97 S.Ct. 699, 701, 50 L.Ed.2d 683 (1977) (states retain civil and criminal jurisdiction over national forests); *United States v. Califor-*

*nia,* 655 F.2d 914, 919 (9th Cir.1980). There is, therefore, no presumption that state regulation of plaintiff's mining operations is preempted merely because they are conducted on federal land, and the *Hancock* line of cases cited by plaintiff is inapplicable.

### B. *Mining Act.*

Plaintiff next argues that although the state may retain legislative jurisdiction over federal lands within its territory, "Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause" of the Federal Constitution, Article IV, § 3, cl. 2, *Kleppe v. New Mexico,* 426 U.S. 529, 543, 96 S.Ct. 2285, 2293, 49 L.Ed.2d 34 (1976) (upholding constitutionality of The Wild Free-roaming Horses and Burros Act, 16 U.S.C. §§ 1331–1340, under the Property Clause). It is pursuant to the Property Clause that Congress enacted the Mining Act which necessarily overrides conflicting state laws under the Supremacy Clause: "a different rule would place the public domain of the United States completely at the mercy of state legislation," *Camfield v. United States,* 167 U.S. 518, 526, 17 S.Ct. 864, 867, 42 L.Ed. 260 (1897).

■■■ Preemption of state law by federal statute is not to be presumed, however, absent "persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained," *Chicago & N.W. Trans. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981); *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). Federal law preempts only those state statutes that "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Perez v. Campbell,* 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Plaintiff thus argues not that the Mining Act precludes states from any regulation of its mining operations, but that the CCA's permit requirement amounts to a "veto power" over its federally authorized activities and thus an obstacle to congressional objectives. The Court does not agree.

Plaintiff relies primarily on the Ninth Circuit's decision in *Ventura County v. Gulf Oil Corporation,* 601 F.2d 1080 (9th Cir.1979), *aff. mem.,* 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980). There the BLM had leased to defendant 120 acres within Los Padres National Forest for oil drilling pursuant to the Mineral Lands Leasing Act of 1920, 30 U.S.C. §§ 181 *et seq.* Plaintiff County sued to enjoin defendant from drilling an oil well pursuant to its lease and approval by various federal agencies unless it secured an Open Zone Use permit from the County Planning Commission pursuant to local ordinance. The Court affirmed dismissal of the action on the ground that

> [t]he federal Government has authorized a specific use of federal lands, and [the County] cannot prohibit that use, either temporarily or permanently, in an attempt to substitute its judgment for that of Congress.

601 F.2d at 1084. The County's argument that no conflict between federal and state law had yet arisen since it had not yet denied a permit was rejected as inconsistent with its request for an injunction:

> [t]he issue is whether [the County] has the power of ultimate control over the Government's lessee, and this issue persists whether or not a use permit would eventually be granted.

601 F.2d at 1085. Thus the Court invalidated what it characterized as "a local veto power," *id.* at 1086. *See also Brubaker v. Board of County Comm'rs,* 652 P.2d 1050 (Col.1982) (Mining Act preempts County's requirement of special use permit for test drilling which had been denied).

Defendants argue that *Ventura* is distinguishable because the County there had sought to prohibit or veto rather than merely to regulate federally authorized activity. Plaintiff's reading of *Ventura* to

equate any permit requirement at all to a "veto power" is cast into doubt, defendants contend, by subsequent Supreme Court decisions rejecting facial challenges to state regulatory schemes absent concrete allegations that the regulations will necessarily be unconstitutionally applied, *see, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 295, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981); *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

Defendants' contention is buttressed by the Ninth Circuit's more recent holding in *United States v. Weiss, supra*, that regulations promulgated by the Forest Service concerning unpatented mining claims did not impermissibly encroach on rights granted by the Mining Act. Citing *Agins*, the Court emphasized that "the reasonableness of the regulations has not been put in issue. Although authority exists for the promulgation of regulations, those regulations may, nevertheless, be struck down when they do operate to accomplish the statutory purpose or where they encroach upon other statutory rights. *Appellants have not attempted to comply with the regulations; therefore, those issues are not before us on appeal*," 642 F.2d at 299 n. 5 (emphasis added).

 The Court agrees that, in light of *Weiss, Ventura* does not compel a finding that defendants' permit requirement necessarily clashes with rights granted under the Mining Act. The CCC seeks not to prohibit or "veto," but to regulate plaintiff's mining activity in accordance with the detailed requirements of the CCA. Unlike in *Ventura* where zoning permits could be "issued on whatever conditions Ventura determines appropriate, or . . . may never [be] issued at all," 601 F.2d 1084, here the CCA provides for permit issuance upon compliance with regulatory requirements comparable to those of the Forest Service and approved in *Weiss*. There is no reason to find that the CCC will apply the CCA's regulations so as to deprive plaintiff of its rights under the Mining Act; if and when

that comes to pass, plaintiffs can then seek to enjoin their enforcement.

In sum, the right of states to regulate mining operations on federal land has long been recognized, *see Butte City Water Co. v. Baker*, 196 U.S. 119, 123–25, 25 S.Ct. 211, 211–13, 49 L.Ed. 409 (1905) (upholding Montana law prescribing mining claim location requirements). As long as the state's permit requirement does not render plaintiff's exercise of rights under the Mining Act impossible, no impermissible conflict exists and plaintiff's facial challenge to the CCA's provisions must fail. See *State ex rel. Andrus v. Click*, 97 Idaho 791, 554 P.2d 969, 974 (1976); *Brubaker*, 652 P.2d at 1059 ("[s]tate and local laws that merely impose reasonable conditions upon the use of federal lands may be enforceable, particularly where they are directed to environmental protection concerns").

## C. *Forest Service Regulations.*

 Finally, plaintiff claims that the regulations issued by the Forest Service which require federal approval of mining Plans of Operations preempt the CCA's permit regulation. Federal regulations such as those of the Forest Service may preempt parallel state regulation in two ways. First they may be found to "occupy the field" of regulation of a particular activity in light of such factors as congressional intent, comprehensiveness of the federal regulations, and need for uniform regulation, *see Chevron*, 726 F.2d at 486. Second, a conflict may be found where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers*, 373 U.S. at 142–43, 83 S.Ct. at 1217, or where the state regulation presents an obstacle to achievement of the purpose of the federal regulation, *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1970). Undertaking this two-tier inquiry recently embraced by the Supreme Court, *see Silkwood v. Kerr-McGee Corp.*, —— U.S. ——, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984), and employed by the Ninth Circuit, *see Chevron*, 726 F.2d at 486

& n. 4, the Court concludes that the Forest Service regulations do not preempt the CCA's permit requirement.

### 1. *Occupying the Field.*

The Forest Service regulations, as has been noted, were enacted pursuant to the OAA which seeks to preserve the nation's forests from "destruction ... and depredation," 16 U.S.C. § 551. Not only does nothing in the statutory language evince an intent to occupy the field of mining regulation on federal forest land but § 480 specifically provides

> The jurisdiction, both civil and criminal, over persons within national forests shall not be affected or changed by reason of their existence....

Moreover, the regulations promulgated by the Forest Service explicitly require compliance with applicable state standards for air quality, water quality, solid waste disposal and other environmental concerns.

Plaintiff points to no legislative history indicating that either Congress or the Forest Service intended to occupy the field of mining regulation on national forest land. Nor can the Court imagine any reason for insisting on uniform regulation of the environmental impact of mining operations on forest land in different states, especially in light of the Forest Service's explicit incorporation of state standards in its regulations. The Court thus concludes that to invalidate the CCA's permit requirement as applied to plaintiff's mining operation would frustrate the clear intent of Congress and the Service that there be "collaborative federal/state efforts" to protect public forests.

### 2. *Conflict.*

The inquiry thus becomes whether there is an irreconcilable conflict, *Kerr*, 104 S.Ct. at 626, between the Forest Service Regulations and the CCA's permit requirement, keeping in mind the "sensitive interrelationship between statutes adopted by the separate, yet coordinate, federal and state sovereignties", *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127, 94 S.Ct. 383, 389, 38 L.Ed.2d 348 (1973). Plaintiff points to and the Court finds no such irreconcilable conflict.

To begin with, the legislative objectives of the federal and state regulations do not clash but are instead analogous, *Kewanee Oil v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). The purpose of both is to "minimize adverse environmental impacts" on National Forest System surface resources, 36 C.F.R. § 228.1 (1983), and in the coastal zone, Cal.Pub. Res.Code §§ 30001–30004. Moreover, until 1974 the Forest Service had no permit requirement; thus, as in *Chevron*, 726 F.2d at 497, the history of federal regulation "demonstrates increasingly stringent protection" of forest land subject to mining claims.

Furthermore, plaintiff cannot claim that the CCA permit in any way prevents it from compliance with the federal regulations. Instead, the CCA is more restrictive than the Forest Service regulations. But, absent explicit preemptive intent, *Chevron*, 726 F.2d at 498 n. 19, "the possibility of proscription by California of conduct that federal law might permit is not sufficient to warrant preemption," *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 668 F.2d 1014, 1049 (9th Cir.1981), *cert. denied*, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

Finally, the Court notes that the Forest Service's Environmental Assessment of plaintiff's Plan of Operations expressly stated that

> Granite Rock is responsible for obtaining any necessary permits which may be required by the California Coastal Commission.

Although the Forest Service is plainly not empowered to grant the State permit authority otherwise preempted by federal law, here it is the Forest Service itself which is alleged to have preempted the CCA. Its own requirement of compliance with the CCA's permit requirement is clear evidence that the federal regulations relied on here were not intended to preempt, and do not conflict with, the CCA.

## IV. CONCLUSION.

Because the Court concludes that the CCA requires plaintiff to secure a permit from the CCC for its mining operations and that the permit requirement is not federally preempted, it need not address defendants' arguments based on California's inherent police power.

Moreover, defendants' contention that plaintiff's future Plans of Operations are subject to consistency review pursuant to § 1456(c)(3)(A) is clearly not adjudicable at this time. Plaintiff concedes that it intends to file additional Plans with the Forest Service, that it intends to continue mining as long as it is economically viable under federal laws, and that its current reserves of limestone indicate future operations in excess of fifty years on a quarry of up to 20 acres. Plaintiff has submitted no further Plans, however, nor has it been granted any additional approvals by the Forest Service. Its contention now that it will not seek consistency review if and when it does submit additional Plans does not suffice to create a case or controversy cognizable in this Court. In any case, plaintiff now seeks only a declaratory judgment as to the CCA's permit requirement inasmuch as defendants admit to having waived consistency review of the present Plan. Consistency review is thus no longer at issue.

Accordingly, plaintiff's motion for summary judgment is denied. The Court having determined that plaintiff is not entitled to relief, judgment dismissing the action will be entered.

IT IS SO ORDERED.